UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2003 OCT 29 A 11: 18
US DISTRICT COURT
HARTFORD CT

| | | |
|---|---|---|
| THOMAS E. ROARK, JOHN MORIN and DWIGHT OTIS, | : | CIVIL ACTION NO. 3:01CV02415 (AVC) |
| Plaintiffs, | : | |
| V. | : | |
| NATROL, INC. and ANDREW M. ESPOSITO, JR., | : | OCTOBER 28, 2003 |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

The plaintiffs in the above-entitled matter have moved the Court to compel defendant Natrol, Inc. to produce certain documentation in connection with the "due diligence" that it conducted prior to its acquisition of Prolab Nutrition, Inc. on October 8, 1999. In particular, regarding the period of time prior to its acquisition of Prolab, defendant Natrol should be compelled to disclose any internal analysis of, or opinion letters provided to it concerning, Prolab's labeling of its products and/or the efficacy of Prolab's products and whether or not the products of Prolab were compliant with applicable federal and state laws, together with all correspondence related thereto.

This case arises out of the terms of a certain Stock Purchase Agreement dated October 8, 1999, by which the plaintiffs' sold and the defendant's purchased the stock of Prolab Nutrition, Inc. In its Counterclaim, defendant Natrol contends, inter alia, that the plaintiffs allegedly made certain representations regarding the lack of potential for product warranty claims and compliance with applicable laws regarding Prolab products (Counterclaim, ¶ 2b, 2c); that claims have allegedly subsequently arisen against Natrol regarding Prolab products, including claimed violations of product labeling laws (Counterclaim, ¶ 3); that the plaintiffs allegedly breached the parties' agreement by inaccurately representing the lack of potential for product warranty claims and compliance with applicable laws (Counterclaim, ¶ 5b, 5c); and that the plaintiffs also allegedly breached the agreement by failing to disclose material facts in regard to products not being in compliance with applicable laws (Counterclaim, ¶ 6).

In order to prevail on its misrepresentation counterclaim, the defendant will have to demonstrate, inter alia, that it *relied* on the plaintiff's alleged representations regarding the lack of potential for product warranty claims and compliance with applicable laws regarding Prolab products; Jacques v. Roy, 144

Conn. 737 (1956) (no misrepresentation where defendant's statements not relied upon by plaintiff; reliance "is an essential element of an action for damages for [fraudulent] representations, and the failure . . . to establish that reliance is fatal to [the] action"); Neiditz v. Housing Authority, 43 Conn. Sup. 283, 292-93 (1994), aff'd, 231 Conn. 598 (1995) (no actionable misrepresentation where facts indicated that party claiming misrepresentation did not rely on other party's statements); and that that reliance was *reasonable* under the circumstances. City Trust Co. v. Jennings, 158 Conn. 173, 178-79 (1969) ("in an action based upon a false or fraudulent representation . . . the person claiming relief must establish [inter alia] . . . that he believed the statement to be true and in fact relied on it"; finding of misrepresentation could not be sustained where, at a time before claimed misrepresentation as to property's acreage took place, plaintiff knew of instruments describing land and its acreage); Cheer v. Ruel, 19 Conn. Sup. 288 (1955) (no reliance to support claim for misrepresentation where party claiming misrepresentation knew that representation was not accurate at time of transaction but went through with transaction anyway).

The discovery that is the subject of the pending motion to compel seeks to determine what *independent* information Natrol had regarding the labeling and

efficacy of Prolab's products when it entered into the agreement to acquire Prolab. Certainly, if Natrol was given independent advice (legal, technical or otherwise) to the effect either that there was compliance with applicable laws or that there was a problem with such compliance, particularly in regard to product labeling laws, then the plaintiff will be able to demonstrate either that the defendant did not, in fact, rely on the plaintiffs' representations or that the defendant could not have reasonably relied on such representations.

In other words, defendant Natrol maintains that the plaintiffs are responsible to the defendant for the breach of certain representations contained in the purchase and sale agreement. Inherent in that claim is the defendant's position that it relied upon those representations and that it reasonably relied on those representations. Otherwise, there cannot be and should not be a basis to impose liability on the plaintiffs. In order to determine whether or not the defendant in fact relied on those representations of the plaintiff, it is necessary to determine the nature and extent of any investigation into that subject matter by Natrol and the nature and extent of the information that Natrol received from its professionals, whether employed internally or hired externally by the defendant, regarding Prolab's labels and products. In this regard, it is important to note that,

prior to the consummation of the purchase and sale transaction between the parties, the purchase price to be paid by Natrol was reduced by some $4 million, at least in part because of certain product labeling concerns. See Deposition, p. 29. It therefore appears that Natrol was provided with some professional advice on the issue of Prolab's product labeling prior to the closing on the sale transaction. However, since the defendant is claiming that it relied on certain representations of the plaintiffs in regard to such product labeling, the plaintiffs are entitled to know exactly what the defendant already knew from its agent's investigation into the subject matter of the plaintiffs' subsequent representations.

The defendant maintains that, to the extent that such independent investigation included the rendering of legal advice, such information may be withheld from disclosure by virtue of the attorney-client privilege. Yet, this Court has recognized that the attorney-client privilege is waived where a party has put the purportedly privileged communications "at issue." See Walsh v. Seaboard Surety Co., 184 F.R.D. 494 (D. Conn. 1999); see also Metropolitan Life Ins. Co. v. Aetna Casualty & Surety Co., 249 Conn. 36, 51-57 (1999). The "at issue" exception rests on the concept of an "implied waiver," and it applies where "'(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the

asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.'" Walsh, 184 F.R.D. at 496, quoting Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975). "Under this standard, 'even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.'" Walsh, 184 F.R.D. at 496, quoting Bowne v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993).

Here, the defendant claims that it relied to its detriment on the representations of the plaintiffs regarding Prolab's labeling of its products and/or the efficacy of Prolab's products and regarding Prolab's compliance with applicable federal and state laws. Yet, the defendant did extensive due diligence to independently investigate and analyze those very matters. The content of those communications, then, may well undermine the factual basis of the defendant's counterclaim. Thus, the defendant has affirmatively claimed reliance on the statements of the plaintiffs, but the plaintiffs can test that claim of reliance only by discovering the content of prior communications that the

defendant may have had with its attorneys (and others) regarding the subject matter of the representations on which the defendant claims to have relied. Under such circumstances, there is an implied waiver of attorney-client privilege because the defendant has "assert[ed] a factual claim the truth of which can only be assessed by examination of a privileged communication." Id.

In other words, legal advice is not privileged when a party claims that it has relied on the representations of another party concerning a matter about which the party has already received its own independent legal advice. Thus, under the circumstances of this case, in which the defendant claims that it reasonably relied on the plaintiffs' representations concerning the labeling and efficacy of Prolab's products, the defendant cannot shield from disclosure any communications that it received opining as to whether Prolab's products met applicable labeling and efficacy standards. To conclude otherwise would allow the defendant to claim that it was misled by the plaintiffs' representations when it may well have been in possession of its own internal analyses or opinion advice which demonstrate either that it did not, *in fact*, rely on the plaintiffs' representations or that it could not have *reasonably* relied on the same.

The existence of such documents and testimony in regard thereto was

recently inquired into at the deposition of Elliot Balbert, the chairman, president, CEO and founder of defendant Natrol. At that deposition, Mr. Balbert was asked about the due diligence process in regard to Natrol's acquisition of Prolab. See Deposition, pp. 22-30. (The pertinent pages from the Deposition of Elliot Balbert are attached to this memorandum of law as Exhibit A.) Mr. Balbert testified that defendant Natrol received expert guidance, including legal opinion, regarding its contemplated acquisition of Prolab. However, at his deposition, Balbert refused to testify as to whether any such advice from Natrol's counsel concerned the labeling of Prolab products. See Deposition, pp. 25-28. . Counsel for the parties discussed the issue on the record at that time but were unable to come to a resolution in regard to the claim of privilege. See Deposition, pp. 26-28.

Likewise, the plaintiffs requested the production of similar documentation in Request No. 1 of their Second Set of Requests for Production Directed to Defendant Natrol, Inc. (dated November 8, 2002), which reads as follows:

> Copies of all documents related to due diligence, including but not limited to all documents concerning marketing, advertising, labeling of Prolab products, including copies of any opinions secured by internal or external so-called experts regarding same, whether they be attorneys providing opinions in regard to compliance with state and federal regulations concerning labeling or marketing, unless otherwise claimed to be privileged, or doctors providing medical opinions about the safety

or risks associated with a particular product.

However, defendant Natrol objected to that request. Although Natrol has produced a privilege log, a copy of which is attached hereto as Exhibit B, that privilege log does not provide an adequate description of the subject matter of the documents enumerated therein to allow the plaintiffs to determine whether any of the particular documents address the issue of product labeling, which is the subject matter of the defendant's allegations of misleading representations.

Based on the foregoing authorities, the defendant should be compelled to disclose the requested information. For the defendant to maintain that it can shield this information from disclosure, information that it had in its possession prior to the closing and therefore prior to the time of the plaintiffs' representations, would constitute a great misuse of the privilege, to the extent that the defendant seeks to claim reliance on such representations. Based on the "at issue" exception, the defendant has impliedly waived its claim of attorney-client privilege to the extent that it is maintaining a claim for reliance. Accordingly, for all of the foregoing reasons, the plaintiffs' Motion to Compel should be granted, and these documents should be ordered to be produced.

PLAINTIFFS,

By______________________________________

Richard P. Weinstein, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107
Telephone No. (860) 561-2628
Federal Bar No. ct06215

**CERTIFICATION**

This is to certify that on the 28th day of October, 2003, a copy of the foregoing was served upon:

Frank F. Coulom, Jr., Esquire
Jason M. Kuselias, Esquire
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Andrew M. Esposito, Jr.
3 Woodside Drive
Woodbridge, CT 06525

______________________________________
Richard P. Weinstein

PROLAB\MOT COMPEL\LMV

# EXHIBIT  A

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS E. ROARK, JOHN MORIN and DWIGHT OTIS, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION NO. 3:01CV02415 (AVC) |
| NATROL, INC., and ANDREW M. ESPOSITO, JR., | ) | |
| Defendants. | ) | |

**CERTIFIED COPY**

DEPOSITION OF ELLIOTT BALBERT

Los Angeles, California

Thursday, October 9, 2003

Reported by:
DARLENE A. MATURA
CSR No. 5959
Job No. 889572

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS E. ROARK, JOHN MORIN and DWIGHT OTIS,<br><br>Plaintiffs,<br><br>vs.<br><br>NATROL, INC., and ANDREW M. ESPOSITO, JR.,<br><br>Defendants. | CIVIL ACTION NO. 3:01CV02415 (AVC) |

Deposition of ELLIOTT BALBERT, taken on behalf of Plaintiff, at Esquire Deposition Services, 6222 Wilshire Boulevard, Suite 204, Los Angeles, California, beginning at 10:00 a.m. and ending at 5:24 p.m. on Thursday, October 9, 2003, before Darlene A. Matura, Certified Shorthand Reporter No. 5959.

APPEARANCES:

For the Plaintiffs:

WEINSTEIN & WISSER
BY: RICHARD P. WEINSTEIN, Attorney at Law
29 South Main Street, Suite 207
West Hartford, Connecticut 06107
(860) 561-2628

For the Defendants:

ROBINSON & COLE
BY: JASON M. KUSELIAS, Attorney at Law
280 Trumbull Street
Hartford, Connecticut 06103-3597
(860) 275-8352

Also Present:

DAVID LAUFER, Vice-president and General Counsel for Natrol

Los Angeles, California; Thursday, October 9, 2003

10:00 a.m. - 5:24 p.m.

ELLIOTT BALBERT,

having been duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. WEINSTEIN:

Q Would you state your full name and residence address for the record, sir.

A Elliott Balbert, 6072 John Muir Road, Hidden Hills, California.

Q And, sir, what is your position with Natrol?

A Chairman, president, CEO.

Q How long have you been chairman, president and CEO?

A And the founder.

MR. MORIN: Richard, I'm only hearing you.

MR. WEINSTEIN: Wait a minute.

THE WITNESS: Since the company was founded in December of 1980.

MR. WEINSTEIN: Can you hear now, John?

MR. MORIN: No.

THE WITNESS: I have a cold and I can't speak much louder.

Q Was there a discussion with the Prolab principals about what role, if any, they would play in Prolab after acquisition?

A Yes.

Q What was the nature of that discussion?

A That they would continue to run and build the business. That was our intent.

Q And did that include all the principals?

A Yes, it did.

Q In regard to the negotiations over the purchase price, what do you remember about those negotiations?

A We made an initial offer in the preliminary letter of intent. We --

Q Do you recall how much?

A I believe it was 34 million.

We then produced a document requesting information from them so that we could do our process.

Q Due diligence?

MR. KUSELIAS: Objection.

MR. WEINSTEIN: Yes?

MR. KUSELIAS: Objection.

You can answer.

MR. WEINSTEIN: You can answer.

Q When you said "process," did you mean due diligence?

MR. KUSELIAS: Objection.

You can answer.

THE WITNESS: Yes.

And subsequent to our investigation of the business, we returned with a reduced price.

BY MR. WEINSTEIN:

Q Of what?

A 30 million.

Q Who performed the due diligence -- well, withdrawn.

I've used the expression "due diligence." You've affirmed the use of that term. How would you define due diligence?

MR. KUSELIAS: Objection. I don't believe he's done that. But we'll --

MR. WEINSTEIN: Well, the record speaks for itself.

Q How would you define due diligence, sir?

MR. KUSELIAS: Objection.

MR. WEINSTEIN: You can answer.

THE WITNESS: Richard, once we had submitted the initial letter of intent, that was then turned over to our in-house general counsel, Eve Mendoza, who was given the responsibility of developing information, acquiring all the documents that we requested,

distributing it to the experts and authorities that we would utilize, and then come back with recommendations for me to, in turn, present it to the board of directors, if it were to get that far.

BY MR. WEINSTEIN:

Q And other than Ms. Mendoza -- it's Attorney Mendoza; is that correct?

A Correct.

Q And is Ms. Mendoza still with the company?

A She is not.

Q Where does she live, do you know?

A I do not know.

Q Does she live in California?

A I do not know. I believe she does, but I can't certify that.

MR. KUSELIAS: Don't guess.

BY MR. WEINSTEIN:

Q Does the company have, presumably from her employment, a last place of address?

A I would imagine so.

Q Do you know what experts or authority were consulted in regard to the due diligence?

A Some, yes.

Q Who?

A The law firm of Gronek & Armstrong.

G-r-o-n-e-k & Armstrong.

Q And who specifically at that law firm?

A Dennis Gronek. I don't know whether or not he rendered the opinions, but Dennis Gronek was our direct contact.

Q Anyone else?

A Ableman, Frayne & Schwab. Ableman, A-b-l-e-m-a-n, Frayne, F-r-a-y-n-e, & S-c-h-w-a-b. Trademark, patent counsel in New York.

Q Yes.

Anybody else?

A And Dr. Alex Schauss.

Q Who was he?

A He is a nutritional VMHS expert and has a firm in Seattle.

Q How do you spell that last name?

A S-c-h-a-u-s-s.

Q Anyone else?

A Goodwin Procter.

Q What role did Goodwin Procter play?

A They are our SEC counsel, and they also were the counsel that helped produce some of our own documents.

Q Did Natrol receive any opinions from any of these outside experts in regard to the labeling of

Prolab products?

MR. KUSELIAS: Objection. Just for the record, obviously, he's specified that the opinions from at least three of the, quote, experts that they are using are legal counsel. So, to the extent you're going to be asking about the specifics of whatever opinions, if any, they were rendering, we're going to assert attorney-client privilege on that and instruct the witness not to answer. But you can proceed with your questioning

MR. WEINSTEIN: Okay. With all due respect, I don't think that an opinion letter given to a public corporation -- that there's any basis to assert attorney-client privilege in regard to the opinion letter. But we'll deal with that.

MR. KUSELIAS: If it comes from counsel, I disagree.

MR. WEINSTEIN: I think you're wrong, but that's okay. Let's get to it to see if there was any.

Q Was there any such letter or opinion rendered?

A We received information from counsel with regards to their -- the requested guidance that they were asked to provide.

Q And did any of those concern labeling?

MR. KUSELIAS: Objection. We're now getting

into the substance.

MR. WEINSTEIN: No, we're not. This is just generic.

MR. KUSELIAS: You're asking what the nature of the opinions were, and I think that's protected by the attorney-client privilege.

MR. WEINSTEIN: It's generic, dealing with labeling. If none of the letters or opinions dealt with labeling, it's all academic, Counsel. You would have to identify, by way of producing a privileged log, at least generically what the opinion letter's about.

MR. KUSELIAS: We're prepared to do.

MR. WEINSTEIN: Okay. So, I'm asking you to do it right now.

MR. KUSELIAS: We're prepared to produce a privileged log.

MR. WEINSTEIN: We've had discovery in this case outstanding for a protracted period of time. I've asked for all the due diligence information. There was nothing in the privileged log which in any way identified any of these opinion letters which may have dealt with any of the issues germane to the case.

MR. KUSELIAS: Well, assuming that the opinion letters are germane. But also, you have the privileged log that we did produce that was at least 20 pages long.

Did you bring that with you to identify or to show or demonstrate that we haven't named those on our privileged log?

MR. WEINSTEIN: I don't recall whether I do or I don't, but I can tell you there was no reference to any opinion letters on that privileged log.

MR. KUSELIAS: Well, there may not have been a designation of, quote, opinion letter, but there may have been designations from those firms.

MR. WEINSTEIN: I can tell you we'll keep the deposition open. It will only be adjourned.

Q In connection with whatever opinion letters were given, did you make a presentation to your board of directors in connection with acquiring Prolab?

A There was a discussion, of course.

Q And was there a board resolution approving the acquisition of Prolab?

A You know, I don't specifically recall, but there must have been. I didn't dig that up.

Q Now, in connection with acquiring Prolab, did you utilize any lenders?

A No, sir.

Q All the money was in-house?

A Yes.

Q In connection with acquiring Prolab, did you

secure any new insurance coverage?

A No, sir.

Q In connection with the acquisition of Prolab, did you have discussion with any of the principals about any labeling concerns that you had?

A Yes, sir.

Q With whom did you have discussions?

A With Tom and John and Andy. And I believe Dwight was in on those.

Q And what were the decisions about labeling issues?

A That they were not in compliance with regards to the nutritional facts panel, tight point construction. There was inconsistency in the labels and in the sales collateral, and that was going to require a redo.

Q And was that the reason that you gave, at least in part, for reducing the offer by four million dollars?

A In part, yes.

Q Do you recall when it was that you first discussed these labeling concerns with the principals of Prolab?

A As you know from the time line, we were on a pretty fast track. And from the initial visit, which was in early August, to the culmination of the

transaction, which was in early October, of 60 days, that would have occurred probably somewhere on or about the middle of September. So, it was very rapid.

I'm trying to give you a time line. But it was certainly after we had made the initial offer, because we went back to Connecticut to negotiate a lower or reduced price.

Q Has Natrol brought any lawsuit against anyone that rendered an opinion in connection with the acquisition of Prolab?

A No, sir.

Q Has Natrol given notice to any professional that it is contemplating bringing such a lawsuit?

A No.

Q In regard to the acquisition of Prolab by Natrol, was there a public release given by the company?

A I believe -- well, first of all, it was our policy not to disclose information to the public until transactions had been finalized with signatures. So, the first press release went out on the day that the contract was signed and the money was transferred.

Q And would Natrol still have in its possession a copy of the press release?

A Yes.

Q Had Natrol acquired any companies prior to

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: OCT 13 2003

DARLENE A. MATURA
CSR No. 5959

# EXHIBIT B

**Natrol, Inc. adv. Thomas Roark, et al.**
United States District Court, District of Connecticut
Case No. 3:01CV02415 (AVC)

**PRIVILEGE LOG OF NATROL, INC.**

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 08/18/1999 | Eve Mendoza, Esq. | | Handwritten Notes contained on Preliminary Legal Due Diligence Request **(Redacted document produced at Bates Nos. D003419 - D003425)** | 7 pages | REDACTED Attorney-Client Work Product |
| undated | Eve Mendoza, Esq. | | Handwritten Notes re corporate records needed | 2 pages | Attorney-Client Work Product |
| 09/15/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Dennis Jolicoeur<br>Michael Surmeian<br>Cheryl Richitt<br>Jon Denis<br>Andrew Viles, Esq. | E-mail re Atlas Environmental Issues | 1 page | Attorney-Client Work Product |
| 09/10/1999 | Eve Mendoza, Esq. | Dennis Gronek, Esq.<br>Elliott Balbert<br>Dennis Jolicoeur | Letter re Prolab - Law Suit Material | 2 pages | Attorney-Client Work Product |
| 09/09/1999 | Eve Mendoza, Esq. | | Handwritten Notes re office conference with Dennis Jolicoeur, Elliott Balbert and Dennis Gronek | 3 pages | Attorney-Client Work Product |

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 09/08/1999 | Eve Mendoza, Esq. | | Handwritten Notes re Prolab | 4 pages | Attorney-Client Work Product |
| 09/07/1999 | Maria Solomon | Andy Viles<br>Elliott Balbert<br>Dennis Jolicoeur<br>Eve Mendoza, Esq. | Memo re Prolab ("ATLAS" ProLab's recognizable name) - Due Diligence | 1 page | Attorney-Client Work Product |
| 09/07/1999 | Andrew J. Boyd, Esq. | Eve Mendoza, Esq. | Memorandum re Atlas; Employee Benefit Plan Due Diligence | 2 pages | Attorney-Client Work Product |
| 09/08/199 | Eve Mendoza, Esq. | Elliott Balbert<br>Dennis Jolicoeur<br>Jon Denis<br>Cheryl Richitt<br>Michael Surmeian<br>Gary De Mello | E-mail re Atlas Due Diligence | 1 page | Attorney-Client Work Product |
| 09/08/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Cheryl Richitt<br>Jon Denis<br>Gary De Mello<br>Dennis Jolicoeur<br>Michael Surmeian | E-mail re Atlas Lang Durham 7 Co. Agreement | 1 page | Attorney-Client Work Product |
| 09/03/1999 | Maria Solomon | Dennis Gronek, Esq.<br>Elliott Balbert<br>Cheryl Richitt<br>Dennis Jolicoeur | Fax Memorandum re ATLAS legal due diligence with confirmation | 2 pages | Attorney-Client Work Product |

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 09/03/1999 | Eve Mendoza, Esq. | Jeffrey Schwab, Esq.<br>Elliott Balbert<br>Cheryl Richitt<br>Dennis Jolicoeur<br>William Buccella, Esq.<br>Andrew Viles, Esq. | Letter re Prolab | 1 page | Attorney-Client<br>Work Product |
| 09/03/1999 | Maria Solomon | Laura Moore<br>Eve Mendoza, Esq. | Memorandum re Atlas | 1 page | Attorney-Client<br>Work Product |
| 09/03/1999 | fdalaw@acom2.com | Eve Mendoza, Esq. | E-mail re Atlas: Claim Substantiation | 2 pages | Attorney-Client<br>Work Product |
| 09/02/1999 | Eve Mendoza, Esq. | | Handwritten Notes re Atlas To Do | 1 page | Attorney-Client<br>Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | Elliott Balbert | E-mail re Unsigned Exclusive Distribution Agreement with Prolab Europe and Sportika | 1 page | Attorney-Client<br>Work Product |
| 09/01/1999 | Maria Solomon | Jon Denis<br>Elliott Balbert<br>Eve Mendoza, Esq. | Memorandum re atlas | 1 page | Attorney-Client<br>Work Product |
| 08/31/1999 | Eve Mendoza, Esq. | Maria Solomon<br>Jon Denis<br>Elliott Balbert | E-mail re Chart of Accounts | 1 page | Attorney-Client<br>Work Product |

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 09/01/1999 | Dennis Jolicoeur | Eve Mendoza, Esq. | E-mail re Atlas sales tax | 1 page | Attorney-Client Work Product |
| 08/30/1999 | Maria Solomon | Laura Moore<br>Eve Mendoza, Esq.<br>Dennis Jolicoeur | Memorandum re Atlas | 1 page | Attorney-Client Work Product |
| 08/31/1999 | Jeffrey Schwab, Esq. | Eve Mendoza, Esq. | Letter re Patrol and Prolab | 1 page | Attorney-Client Work Product |
| 09/01/1999 | Maria Solomon | Andrew Viles, Esq.<br>Bill Buccella, Esq.<br>Elliott Balbert<br>Eve Mendoza, Esq. | Fax Memorandum re Prolab with confirmation | 2 pages | Attorney-Client Work Product |
| 09/01/1999 | Maria Solomon | Andy Viles<br>Elliott Balbert<br>Eve Mendoza, Esq. | Fax Memorandum with attached letter sent to Mr. Esposito (contains handwritten notes) | 5 pages | Attorney-Client Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | Andy Viles<br>Dennis Jolicoeur | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | | Handwritten Notes re Need | 2 pages | Attorney-Client Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | | Handwritten Notes contained on Preliminary Legal Due Diligence Request | 7 pages | Attorney-Client Work Product |

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 08/17/1999 | Eve Mendoza, Esq. | | Handwritten Notes contained on Letter from Dennis Jolicoeur to Andrew Esposito | 1 page | Attorney-Client Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | | Handwritten Notes re Alan Silver | 1 page | Attorney-Client Work Product |
| undated | Eve Mendoza, Esq. | | Handwritten Notes contained on Prolab Due Diligence Check List | 1 page | Attorney-Client Work Product |
| 09/01/1999 | Dennis Jolicoeur | Elliott Balbert<br>Eve Mendoza, Esq. | E-mail re Atlas litigation | 1 page | Attorney-Client Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Dennis Jolicoeur | E-mail re Atlas Due Diligence with attached draft letter to Andrew Esposito | 3 pages | Attorney-Client Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Dennis Jolicoeur<br>Gronek & Armstrong<br>John R. LeClaire<br>Andrew Viles, Esq.<br>William Buccella, Esq. | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Cheryl Richitt<br>Jon Denis<br>Gary De Mello<br>Dennis Jolicoeur | E-mail re Atlas Legal Agreements | 1 page | Attorney-Client Work Product |

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 09/01/1999 | Eve Mendoza, Esq.<br>Elliott Balbert | Elliott Balbert<br>Eve Mendoza, Esq.<br>Dennis Jolicoeur<br>Cheryl Richitt<br>Gary De Mello<br>Jon Denis<br>John R. LeClaire<br>Andrew Viles, Esq.<br>Gronek & Armstrong | 9/01/1999 and 8/31/1999 E-mails re Atlas | 1 page | Attorney-Client Work Product |
| 08/31/1999 | Eve Mendoza, Esq. | Elliott Balbert | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 08/31/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Dennis Jolicoeur<br>Cheryl Richitt<br>Jon Denis<br>Gary De Mello<br>Andrew Viles, Esq.<br>John R. LeClaire<br>William Buccella, Esq.<br>Gronek & Armstrong | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 08/24/1999 | Eve Mendoza, Esq.<br>Jon Denis | Jon Denis<br>Elliott Balbert<br>Eve Mendoza, Esq. | E-mails re Atlas | 1 page | Attorney-Client Work Product |

::ODMA\MHODMA\LADOCS;495706;1

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 08/24/1999 | Eve Mendoza, Esq. | William Buccella, Esq.<br>Andrew Viles, Esq.<br>Elliott Balbert<br>Dennis Jolicoeur | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 08/24/1999 | Eve Mendoza, Esq.<br>Elliott Balbert | Gronek & Armstrong<br>Elliott Balbert<br>Eve Mendoza, Esq.<br>Dennis Jolicoeur | 8/19/1999 and 8/24/1999 E-mails re Atlas | 2 pages | Attorney-Client Work Product |
| 09/01/1999 | Eve Mendoza, Esq. | Jeffrey Schwab, Esq.<br>Elliott Balbert<br>Cheryl Richitt<br>Dennis Jolicoeur<br>William Buccella, Esq.<br>Andrew Viles, Esq. | Letter re Prolab with attached Airborne Express receipts | 3 pages | Attorney-Client Work Product |
| 09/01/1999 | Dennis Gronek, Esq. | Eve Mendoza, Esq. | Fax Transmission of changes to Sections 3.16, 3.17 and 3.18 | 4 pages | Attorney-Client Work Product |
| 09/17/1999 | Dennis Gronek, Esq. | Eve Mendoza, Esq. | Opinion Letter re Prolab | 10 pages | Attorney-Client Work Product |
| 09/10/1999 | Jeffrey Schwab, Esq. | Eve Mendoza, Esq.<br>William Buccella, Esq. | Opinion Letters re Prolab Nutrition, Inc. | 25 pages | Attorney-Client Work Product |

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 08/18/1999 | Eve Mendoza, Esq. | | Handwritten Notes contained on Letter from Donald O. Nickey, Esq. to Eve Mendoza, Esq. re Intellectual Property Due Diligence on Prolab **(Redacted document produced at Bates Nos. D005014 - D005015)** | 2 pages | REDACTED Attorney-Client Work Product |
| 10/08/1999 | Eve Mendoza, Esq. | Andrew Viles, Esq.<br>Elliott Balbert<br>Dennis Jolicoeur | E-mail re Prolab | 1 page | Attorney-Client Work Product |
| 11/01/1999 | Eve Mendoza, Esq.<br>Vic Poveromo | Vic Poveromo<br>Cheryl Richitt<br>Elliott Balbert<br>Dennis Jolicoeur<br>Andrew Esposito | 10/28/1999 and 11/01/1999 E-mails re Prolab Nutrition | 2 pages | Attorney-Client Work Product |
| 10/28/1999 | Vic Poveromo | Dennis Jolicoeur<br>Eve Mendoza, Esq. | E-mail re Prolab Nutrition | 1 page | Attorney-Client Work Product |
| 09/20/1999 | fdalaw@acom2.com | Eve Mendoza, Esq.<br>Dennis Jolicoeur<br>Elliott Balbert<br>Andrew Viles, Esq. | E-mail re Atlas Licenses | 1 page | Attorney-Client Work Product |
| 09/10/1999 | Jeffrey Schwab, Esq. | Eve Mendoza, Esq.<br>William Buccella, Esq. | Opinion Letters re Prolab Nutrition, Inc. | 25 pages | Attorney-Client Work Product |

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 09/14/1999 | Eve Mendoza, Esq. | | Handwritten Notes re Prolab | 1 page | Attorney-Client Work Product |
| 09/14/1999 | Eve Mendoza, Esq. | | Handwritten Notes re telephone conversation with Dennis Gronek | 2 pages | Attorney-Client Work Product |
| 09/03/1999 | Eve Mendoza, Esq. | | Handwritten Notes re Gronek concerns | 1 page | Attorney-Client Work Product |
| 08/25/1999 | Eve Mendoza, Esq. | | Handwritten Notes re telephone conversation with William Buccella, Dennis Jolicoeur | 4 pages | Attorney-Client Work Product |
| 08/23/1999 | Eve Mendoza, Esq. | Dennis Gronek, Esq.<br>Elliott Balbert<br>Dennis Jolicoeur<br>Cheryl Richitt<br>Gary De Mello<br>Jon Denis<br>Jon Le Claire, Esq. | Letter re Prolab Marketing Notebook (contains handwritten notes) | 2 pages | Attorney-Client Work Product |

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 08/23/1999 | Eve Mendoza, Esq. | William Buccella<br>Elliot Balbert<br>Dennis Jolicoeur<br>John LeClaire, Esq.<br>Andrew Viles, Esq.<br>Gary De Mello<br>Cheryl Richitt<br>Jon Denis<br>Michael Surmeian<br>Gronek & Armstrong | E-mails re Atlas | 1 page | Attorney-Client Work Product |
| 08/23/1999 | Eve Mendoza, Esq. | Dennis Jolicoeur<br>Gary De Mello<br>Cheryl Richitt<br>Jon Denis<br>Michael Surmeian<br>Elliott Balbert<br>John LeClaire, Esq.<br>Gronek & Armstrong | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 08/23/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Cheryl Richitt<br>Jon Denis<br>Gary De Mello<br>Dennis Jolicoeur | E-mail re Atlas - Original Marketing Campaign Book | 1 page | Attorney-Client Work Product |

::ODMA\MHODMA\LADOCS;495706;1

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 08/23/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Gary De Mello<br>Jon Denis<br>Cheryl Richitt<br>Michael Surmeian<br>Dennis Jolicoeur | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 08/23/1999 | Eve Mendoza, Esq. | Dennis Jolicoeur<br>Gary De Mello<br>Cheryl Richitt<br>Jon Denis<br>Michael Surmeian<br>Elliott Balbert<br>John LeClaire, Esq.<br>Gronek & Armstrong | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 08/20/1999 | Maria Solomon for Eve Mendoza, Esq. | John LeClaire, Esq.<br>Elliott Balbert<br>Eve Mendoza, Esq. | Fax Memorandum re Prolab/Atlas with attached confirmation | 2 pages | Attorney-Client Work Product |
| 08/23/1999 | Eve Mendoza, Esq. | Dennis Gronek, Esq.<br>Elliott Balbert<br>Dennis Jolicoeur<br>Cheryl Richitt<br>Gary De Mello<br>Jon Denis<br>John LeClaire, Esq. | Letter re Prolab Marketing Notebook | 2 pages | Attorney-Client Work Product |

::ODMA\MHODMA\LADOCS;495706;1

| DATE | AUTHOR | RECIPIENT | DOCUMENT | NO. OF PAGES | PRIVILEGE |
|---|---|---|---|---|---|
| 08/20/1999 | Maria Solomon for Dennis Jolicoeur | Andy Viles, Esq.<br>Elliott Balbert<br>Eve Mendoza, Esq. | Fax Memorandum re Prolab | 1 page | Attorney-Client Work Product |
| 08/19/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Dennis Jolicoeur | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| 08/19/1999 | Eve Mendoza, Esq.<br>Elliott Balbert | Elliott Balbert<br>Eve Mendoza, Esq.<br>Dennis Jolicoeur<br>Cheryl Richitt<br>Jon Denis<br>Gary De Mello | 8/18/1999 and 8/19/1999 E-mails re Atlas Due Diligence | 1 page | Attorney-Client Work Product |
| 08/18/1999 | Eve Mendoza, Esq. | Elliott Balbert<br>Dennis Jolicoeur<br>Cheryl Richitt<br>Jon Denis<br>Gary De Mello | E-mail re Atlas Due Diligence | 1 page | Attorney-Client Work Product |
| 08/03/1999 | Dennis Jolicoeur | Elliott Balbert<br>Eve Mendoza, Esq. | E-mail re Atlas | 1 page | Attorney-Client Work Product |
| | | | | | |

::ODMA\MHODMA\LADOCS;495706;1