UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS E. ROARK, JOHN MORIN and DWIGHT OTIS | : <br> : CIVIL ACTION NO: 3:01CV2415 (AVC) <br> : |
| V. | : <br> : <br> : |
| NATROL, INC. and ANDREW M. ESPOSITO, JR. | : <br> : <br> : NOVEMBER 17, 2003 |

**DEFENDANT NATROL, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Defendant, Natrol, Inc. ("Natrol"), submits this memorandum in opposition to Plaintiffs' motion to compel dated October 28, 2003. The documents requested by the Plaintiffs are protected by attorney-client privilege and the "at issue" exception to the privilege is not applicable.

**I.   BACKGROUND**

On or about October 8, 1998, the Plaintiffs and Natrol entered into a stock purchase agreement ("Agreement") whereby Natrol acquired all of the Plaintiffs' stock in Prolab Nutrition, Inc. Under the Agreement, the Plaintiffs made certain representations and warranties, including, but not limited to, the absence of undisclosed liabilities, the non-existence and lack of potential for product warranty claims, and compliance with applicable laws. See Agreement at Sec. 3.16 (attached hereto as Exhibit A). In addition, the Plaintiffs agreed to indemnify and hold harmless Natrol for all losses arising out of,

but not limited to, any inaccuracy or breach of any representation or warranty made by the Plaintiffs under the Agreement, material undisclosed liabilities and any claims relating to any Prolab product labels.  See Agreement at Sec. 5.02.

Subsequent to the execution of the Agreement, multiple lawsuits arose in multiple jurisdictions alleging injuries caused by Prolab products, violations of product warranties, and failures to comply with applicable laws, including product labeling laws.  Pursuant to the Agreement, Natrol demanded indemnification from Plaintiffs for these claims.  Despite the demands, the Plaintiffs failed to honor their obligation under the Agreement.

On November 27, 2001, the Plaintiffs commenced action in the Superior Court, Judicial District of Hartford, seeking declaratory judgment as to the rights and obligations of the parties under the Agreement.  Natrol removed the matter to this court on December 26, 2002.  On January 10, 2002, the Plaintiffs filed an Amended Complaint.  On July 3, 2002, Natrol filed its Answer, as well as a Counterclaim for breach of contract.

In their Second Set of Requests for Production, the Plaintiffs requested all documents relating to Natrol's due diligence as to the labeling of Prolab products, including the opinions of attorneys in regard to compliance with state and federal regulations.  Natrol responded, withholding documents that were protected by attorney-client privilege and providing a privilege log identifying those documents.

On October 28, 2003, the Plaintiffs filed a Motion to Compel, seeking production of those protected documents.  As set forth below, the Plaintiffs are not entitled to the

production of the documents, because they are privileged and the "at issue" exception is inapplicable.

## II.  ARGUMENT

### A.  The documents requested by Plaintiffs are protected by the attorney-client privilege.

There can be little dispute and, in fact, the Plaintiffs have not argued otherwise, that the requested documents are protected by the attorney-client privilege.

The attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice.  Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).  The privilege was created "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice."  Id. at 389.  On numerous occasions, the Connecticut Supreme Court has reaffirmed the importance of the privilege and has recognized the long-standing, strong public policy of protecting it.  Olson v. Accessory Controls & Equipment Corp., 254 Conn. 145, 147, 757 A.2d 14 (2000).  It has been held that the attorney-client privilege extends to professional advice and communications from corporate in-house counsel.  Pas Assocs. v. Twin Labs., No. CV990174428S, 2001 Conn. Super. LEXIS 3392 (Conn. Super. Ct. Dec. 5, 2001) (electronic cases attached hereto as Exhibit B).

The Plaintiffs seek production of confidential communications between Natrol and

its in-house counsel.  This documentation is clearly protected by the attorney-client privilege, a fact which the Plaintiffs do not dispute in their Motion to Compel.

Furthermore, despite Plaintiffs' Counsel's assertions at the deposition of Eliot Barber at Natrol (<u>See</u> Exhibit A to Plaintiffs' Motion to Compel at p. 27, lines 17-22 and p. 28, lines 4-6), Natrol's privilege log clearly designates such "opinion letters."  (<u>See</u> Exhibit B to Plaintiffs' Motion to Compel at p. 7-8).  In addition, as Plaintiffs' Counsel indicates, Natrol has consistently maintained its objection to producing such information, which is clearly protected.  As set forth herein, there is no basis to violate that protection.

**B.     The "at issue" exception to the attorney-client privilege is not applicable in this case.**

The Plaintiffs claim that the attorney-client privilege should be pierced so they may attempt to defend a misrepresentation claim that has not even been asserted by Natrol.  First, Natrol's Counterclaim is for breach of contract to which the privileged communications are irrelevant.  Secondly, even if the protected communications were relevant, destroying the attorney-client privilege would be improper since Natrol has not placed the communications directly at issue as required by precedent.

The Connecticut Supreme Court addressed the "at issue" exception to the attorney-client privilege for the first time in <u>Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.</u>, 249 Conn. 36, 730 A.2d 51 (1999).  Before defining the narrow contours of the exception, the Court stated that "[e]xceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications."

Id. at 52.  In light of the importance of the attorney-client privilege, the "at issue" exception "is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action."  Id.  The court identified cases in which waiver of the privilege would be appropriate, such as "when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship."  Id. at 53.

    The Court further limited the "at issue" exception stating, "Merely because the communications are relevant does not place them at issue."  Id. at 54.  An opposite finding, the Court explained, would permit the "at issue" doctrine to "severely erode the attorney-client privilege and undermine the public policy considerations on which it is based."  Id.  If admitting that one relied on legal advice in making a legal decision put those communications at issue, "such advice would be at issue whenever the legal decision was litigated."  Id.  In addition, the Court held that an opposing party cannot destroy the privilege by claiming a need for the documents, as "it would be inconsistent with the nature and purpose of the privilege to make an exception to the privilege based only on the unavailability of information from other sources."  Id. at 57.

    The Plaintiffs rely on Walsh v. Seaboard Sur. Co., 184 F.R.D. 494 (D. Conn. 1999) in arguing that the "at issue" exception is applicable.  However, Walsh was decided prior to the Metropolitan Life case and the Court acknowledged that, up to that

point, "no Connecticut appellate court has addressed the "at issue" exception." Walsh at 496. The Walsh court embraced a broad reading of the exception, basing application of the exception upon the relevance of the information and the need of the opposing party in obtaining the information. Id. As explained above, the Connecticut Supreme Court explicitly rejected such a broad application of the "at issue" exception, holding that the documents' relevance or the needs of the opposing party do not place the documents "at issue." Metro. Life at 54, 57. In light of the Metropolitan Life, the Plaintiffs' reliance on Walsh is clearly misplaced.

Due to the hesitance of Connecticut courts in applying the "at issue" exception and the fact that the privileged communications are not relevant to the legal claims in this action, the attorney-client privilege cannot be pierced and the Plaintiffs' Motion to Compel must be denied.

### i.   The communications have no relevance to Natrol's breach of contract Counterclaim.

The Plaintiffs argue that Natrol's Counterclaim for misrepresentation has put the protected communications at issue and, therefore, the privilege has been waived. However, the Plaintiffs have created a counterclaim that Natrol has not asserted. Natrol's Counterclaim is for breach of contract and the privileged communications have no relevance to the outcome of that claim.

In light of the clear language of the Agreement, no extrinsic evidence is necessary to assess the parties' obligations under the contract. When "parties have deliberately put

their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing." Heyman Assocs. No. 1 v. Ins. Co. of Pennsylvania, 231 Conn. 756, 780, 653 A.2d 122 (1995). If a contract is unambiguous, "to permit oral testimony, or prior or contemporaneous conversations, or usages…in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme." Id.

In Medtronic, Inc. v. Seaberg Med., 162 F.R.D. 133, 134 (D. Minn. 1995), the plaintiff sought to compel testimony and production of documents relating to the defendant's attorneys' interpretation and understanding of a Settlement Agreement between the parties. The plaintiff claimed that the defendant had, through its pleadings, put the defendant's interpretation and understanding of the Agreement at issue. Id. The court denied the plaintiff's motion to compel, stating that, since "the document speaks for itself…no extrinsic evidence is needed and [the defendant] has waived no privilege." Id. at 135.

The Agreement between the Plaintiffs and Natrol is clear and unambiguous. In the "REPRESENTATIONS AND WARRANTIES OF THE STOCKHOLDERS" section, the Plaintiffs warranted, among other things, that there did not exist any "product liability or other similar claims or any facts upon which a material claim of such nature could be

based" and that "[n]o product distributed by Prolab is adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act." Agreement at Sec. 3.16 (Ex. A). The Plaintiffs further agreed to indemnify Natrol for "any inaccuracy or breach of any representation or warranty made by Prolab or the Stockholders…[and for] claims relating to any product labels of Prolab." Agreement at Sec. 5.02 (Ex. A).

As in Medtronic, the Agreement between the Plaintiffs and Natrol speaks for itself. There is no need for extrinsic evidence to evaluate Natrol's breach of contract claim, as the Agreement encompasses all of the obligations between the parties. The communications between Natrol and its counsel are irrelevant to the Plaintiffs' clear breach of their obligations under the Agreement. As such, there is no basis to pierce the attorney-client privilege.

> **ii.   Even if the communications were relevant, Natrol has not specifically placed them at issue.**

Even if the protected communications were deemed relevant to Natrol's breach of contract claim or if Natrol actually asserted a claim for misrepresentation, the Plaintiffs' attempted application of the "at issue" doctrine would violate the constraints set forth in Metropolitan Life, 249 Conn. 36.

In establishing the confines of the "at issue" exception, the Connecticut Supreme Court warned against liberal waiver rules, providing that the attorney-client privilege could be waived when "a party specifically pleads reliance on an attorney's advice as an element of the claim or defense, voluntarily testifies regarding portions of the attorney-

client communication, or specifically places at issue, in some other manner, the attorney-client relationship." Id. at 53.  Courts have been hesitant to extend the exception beyond circumstances in which the protected party specifically places the communication or relationship itself at issue.

In Metropolitan Life, 249 Conn. at 41, the plaintiff, Metropolitan, brought a declaratory action against excess liability insurers, seeking coverage for asbestos related losses as the primary level of coverage approached exhaustion.  The defendants asserted that settlements entered into by Metropolitan were unreasonable and, therefore, they were not obligated to indemnify.  Id. at 55.  In deposition testimony, Metropolitan's senior officials admitted that the advice of counsel was a significant motivating factor in the settlement decisions.  Id. at 54.  Thereafter, the defendants sought production of documents between Metropolitan and counsel, claiming that the communications were put at issue.  Id. at 55.  Despite the importance of those communications to the defendants' defense, the Court held that the "at issue" exclusion was inapplicable because Metropolitan had not offered the privileged documents as proof of the reasonableness of the settlements.  Id.  Had Metropolitan sought to prove reasonableness based on the advice of counsel, then the communications would have been placed at issue.  Id. at 56.  The court explained, "When privileged documents are not at issue, the opposing party cannot destroy the attorney-client privilege by merely claiming a need for the documents…[i]t would be inconsistent with the nature and purpose of the [attorney-

client] privilege to make an exception…based only on the unavailability of the information from other sources." Id. at 56-57.

Other courts have followed the proposition that the exception applies only when a protected party specifically places the communications themselves at issue. For example, in ShareAmerica, Inc. v. Ernst & Young, No. CV93307132S, 1998 Conn. Super. LEXIS 463, at *1 (Conn. Super. Ct. Feb. 20, 1998) (copy attached within Exhibit B), plaintiff filed suit against defendant auditors, claiming that it was unable to proceed with a public stock offering due to the auditors' breach of contract. The defendants sought production of documents relating to recommendations and advice made by plaintiff's counsel regarding the stock offering. Id. at *2. The court denied the request, holding that the "at issue" exception did not apply since the legal claims asserted by the plaintiff did not make the non-disclosed communications and the legal effects thereof a direct subject of the dispute. Id. at *8. See also Harter v. Univ. of Indianapolis, 5 F.Supp.2d 657, 664 (D. Ind. 1998) (when a client files a lawsuit in which his or her state of mind, such as good faith or intent, may be relevant, the client does not waive the privilege as to all relevant communications unless the client relies specifically on advice of counsel to support a claim or defense); North River Ins. Co. v. Philadelphia Reinsurance Corp., 797 F.Supp. 363 (D. N.J. 1992) ("at issue" exception applies only when the party has asserted a claim or defense that he or she intends to prove by disclosure of an attorney-client communication).

In no manner has Natrol specifically placed the privileged communications to or from counsel at issue. It has not pled reliance on its counsel's advice in support of a claim or defense, nor has it voluntarily testified regarding those communications. Further, even if Natrol <u>had</u> made a claim for misrepresentation, the protected documents would <u>still</u> not be directly at issue, as it would not rely on the privileged communications in support of that claim.

Further, as set forth in <u>Metropolitan Life</u>, neither the potential relevance of the documents nor the Plaintiffs' alleged need to obtain the documents are sufficient reasons to invoke the "at issue" exception. In order for the limited exception to apply, Natrol must affirmatively place the communications themselves directly at issue. That simply has not occurred in this case.

### III. CONCLUSION

The information sought by the Plaintiffs is clearly within the protection of the attorney-client privilege and attorney work product doctrine. There is no valid exception that exists in this case to violate those protections and, thus, the Plaintiffs' Motion to Compel production of privileged documents must be denied.

DEFENDANT
NATROL, INC.


By_____/S/Jason M. Kuselias
   Frank F. Coulom, Jr. (ct05230)
   Jason M. Kuselias (ct 20293)
   Robinson & Cole LLP
   280 Trumbull Street
   Hartford, CT 06103-3597
   Email: fcoulom@rc.com
   Email: jkuselias@rc.com
   Tel. No.: (860) 275-8200
   Fax No.:  (860) 275-8299

- 13 -

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via facsimile and first class mail, postage prepaid, on the 17th day of November, 2003, to:

Richard P. Weinstein, Esq.
Weinstein & Wisser, P.C.
29 South Main St., Suite 207
West Hartford, CT 06107

_____/S/Jason M. Kuselias<br>Jason M. Kuselias

- 13 -