has any preemptive right, right of first refusal or similar right to acquire the Shares, any other shares of capital stock of Prolab, in connection with the transactions contemplated by this Agreement or otherwise; (iii) there are no restrictions on the transfer of any shares of capital stock of Prolab, other than those imposed by relevant state and federal securities laws; (iv) no person has any right to cause Prolab thereof to effect the registration under the Securities Act of 1933, as amended, of any shares of its capital stock or any other securities (including debt securities); (v) Prolab does not have an obligation to purchase, redeem or otherwise acquire any of its equity securities or any interests therein, or to pay any dividend or make any other distribution in respect thereto; and (vi) there are no voting trusts, stockholders' agreements, or proxies relating to any securities of Prolab.

Section 3.06. Subsidiaries; Investments. A complete and correct list of all of the direct and indirect Subsidiaries of Prolab is set forth in Section 3.06 of the Disclosure Schedule. All of the outstanding shares of capital stock of each Subsidiary are duly authorized, validly issued, fully paid and nonassessable and all of such shares or other equity interest are owned beneficially and of record by the Company or Companies indicated in Section 3.06 of the Disclosure Schedule, free and clear of any and all Claims. Except as set forth in Section 3.06 of the Disclosure Schedule, none of Prolab owns or has any direct or indirect interest in or control over any corporation, partnership, joint venture or other entity of any kind. For purposes hereof, the term "Subsidiary" means, with respect to any Person, any corporation more than 50% of the outstanding voting securities of which, or any partnership, joint venture or other entity more than 50% of the total equity interest of which, is directly or indirectly owned by such Person.

Section 3.07. Financial Statements. Included in Section 3.07 of the Disclosure Schedule are the following financial statements of Prolab, all of which statements (including the footnotes and schedules thereto) were prepared from the books and records of Prolab in accordance with GAAP (except for the absence of some or all footnotes required by GAAP) and fairly present the financial position of Prolab on the dates of such statements and its results of operations for the periods covered thereby: (i) unaudited balance sheet, statement of income and retained earnings and statement of cash flows as at December 31, 1996, December 31, 1997 and December 31, 1998, and (ii) unaudited balance sheet, statement of income and retained earnings and statement of cash flows as at August 31, 1999 and statements of operations and cash flows for the eight-month period then ended (the "Base Balance Sheet").

Section 3.08. Absence of Undisclosed Liabilities. Except as disclosed in Section 3.08 of the Disclosure Schedule and to the extent reflected or reserved against in the Base Balance Sheet, Prolab has no liabilities or obligations of any kind or nature, whether accrued, absolute, contingent or otherwise, asserted or unasserted, except liabilities (i) set forth in the Disclosure Schedule, (ii) incurred in the ordinary course of business since the date of the Base Balance Sheet consistent with the terms of this Agreement or, (iii) for the performance of obligations under contracts entered into in the ordinary course of business.

Section 3.09. Absence of Certain Developments. Since December 31, 1998, Prolab has conducted its business only in the ordinary course consistent with past practice and, except as set forth in Section 3.09 of the Disclosure Schedule, there has been: (i) no change in the condition, financial or otherwise, of Prolab or in the assets, liabilities, properties or business of Prolab which change by itself or in conjunction with all other such changes, whether or not arising in the ordinary course of business, has had a Material Adverse Effect; (ii) no mortgage, encumbrance or lien placed on any of the properties of Prolab or any of its Subsidiaries; (iii) no declaration, setting aside or payment of any dividend or other distribution with respect to, or any direct or indirect redemption or acquisition of, any shares of any capital stock of any class of Prolab or any options, warrants or other rights to acquire, or securities convertible into or exchangeable for, any such capital stock; (iv) no waiver or cancellation of any debt or claim held by Prolab; (v) no incurrence or modification of any contingent liability with respect to the obligations of others, and no incurrence or modification of any other contingent or fixed obligations or liabilities except in the ordinary course of business and consistently with past practices; (vi) no increase, direct or indirect, in the compensation paid or payable to any officer, director, employee, agent or stockholder other than salary increases in the ordinary course of business consistent with past practice; (vii) no material loss, destruction or damage to any property of Prolab, whether or not insured; (viii) no notice of any claim of unfair labor practices or labor dispute or work stoppage involving Prolab and no change in senior executives of Prolab or; (ix) no acquisition or disposition of any assets (or any contract or arrangement therefor) nor any other transaction by Prolab other than in the ordinary course of business; (x) no obligation or liability incurred by Prolab to any of their respective officers, directors, stockholder or employees, or any loans or advances made by Prolab to any of their respective officers, directors, stockholders or employees, except normal compensation and expense allowances payable to officers or employees; (xi) no change in accounting methods or practices, credit practices or collection policies used by Prolab; and (xii) no agreement or understanding whether in writing or otherwise, that would result in any of the transactions or events or require Prolab to take any of the actions specified in paragraphs (i) through (xi) above.

Section 3.10. Accounts Receivable. Except to the extent reserved against in the Base Balance Sheet, all of the accounts receivable of Prolab are valid and enforceable claims, are subject to no set-off or counterclaim, and are fully collectable in ninety (90) days, except for receivables due from GND and AAFES, which shall be collectable in the normal course of business, after deducting the allowance for doubtful accounts stated in the Base Balance Sheet and adjusted since the date thereof in accordance with GAAP.

Section 3.11. Transactions with Affiliates. Except as set forth in Section 3.11 of the Disclosure Schedule, there are no loans, leases or other continuing transactions between Prolab and any present or former stockholder, director or officer of Prolab, or any member of such officer's, director's or stockholder's immediate family, or any person controlled by such officer, director or stockholder or his or her immediate family. Except as set forth in

Section 3.11 of the Disclosure Schedule, no stockholder, director or officer of Prolab nor any of their respective spouses or family members, owns directly or indirectly on an individual or joint basis any material interest in, or serves as an officer or director or in another similar capacity of, any competitor or supplier of Prolab, or any organization which has a material contract or arrangement with Prolab.

Section 3.12. Title to Properties.

(a) Title. Except as set forth in Section 3.12(a) of the Disclosure Schedule, Prolab has good and valid title to all of its properties and assets reflected on the applicable Base Balance Sheet or acquired thereafter, free and clear of all mortgages, security interests, liens, restrictions or encumbrances except for (i) those restrictions and encumbrances which do not individually or in the aggregate materially interfere with, or restrict, the use and operation of said properties and assets as the same are currently used and operated and (ii) those liens that arise by operation of law to secure the payment of applicable ad valorem and/or personal taxes. All equipment included in such properties which is necessary to the business of Prolab is in good condition and repair (ordinary wear and tear excepted) and all leases of real or personal property to which Prolab or its Subsidiaries is a party are fully effective and afford such company peaceful and undisturbed possession of the subject matter of the lease.

(b) Consents. Except as set forth in Disclosure Schedule Section 3.12(b), no consent or approval is required with respect to the transactions contemplated by this Agreement from the other parties to any lease of real or personal property, or from any regulatory authority, no filing with any regulatory authority is required in connection therewith, and to the extent that any such consents, approvals or filings are required, Prolab or the Stockholders will obtain or complete them before the Closing.

(c) Compliance with Law. Prolab has not received any notice from any governmental authority of any violation of any law, ordinance, regulation, license, permit or authorization issued with respect to any owned or leased real property that has not been heretofore corrected and no such violation exists which could have a Material Adverse Effect except as set forth in Section 3.12(c) of the Disclosure Schedule. All improvements located on or constituting part of the owned or leased real property and their use and operation by Prolab were and are now in compliance in all respects with all applicable laws, ordinances, regulations, licenses, permits and authorizations, expect as set forth in Section 3.12(c) of the Disclosure Schedule. No approval or consent to the transactions contemplated by this Agreement is required of any governmental authority with jurisdiction over any aspect of the owned or leased real property or its use or operations. Prolab has not received any notice of any real estate tax deficiency or assessment nor is aware of any proposed deficiency, claim or assessment with respect to any of the owned or leased real property, or any pending or threatened condemnation thereof.

(d)     Condition of Owned Real Property.  Except as set forth in Section 3.12(d) of the Disclosure Schedule, there are no material defects in the physical condition of any land, buildings or improvements owned by Prolab, including without limitation, structural elements, mechanical systems, parking and loading areas, and all such buildings and improvements are in good operating condition and repair, have been well maintained.  To the Knowledge of Prolab and the Stockholders, none of the property owned by Prolab is located in an area designated by any governmental authority as being within a flood plain or subject to special flood or other hazards.  Access to the property owned by Prolab is by a public way or public street.  To the Knowledge of Prolab and the Stockholders, all water, sewer, gas, electric, telephone, drainage and other utilities required by law or necessary for the current or planned operation of the real property leased by Prolab have been connected under valid permits and pursuant to valid easements where required, and are sufficient to service the property owned by Prolab and are in good operating condition.

Section 3.13.  Tax Matters.  Prolab has filed all federal, state, local and foreign tax returns required to be filed by it through the date hereof, and has paid or caused to be paid all federal, state, local, foreign, and other taxes, including without limitation income taxes, estimated taxes, excise taxes, sales taxes, use taxes, premium taxes, gross receipts taxes, franchise taxes, employment and payroll-related taxes, withholding taxes, stamp taxes, transfer taxes, and property taxes, whether or not measured in whole or in part by net income, (collectively, "Taxes"), required to be paid by it through the date hereof whether disputed or not, except taxes which have not yet accrued or otherwise become due, for which adequate provision has been made in the pertinent financial statements referred to in Section 3.07 above.  The provisions for taxes on the Base Balance Sheet are sufficient as of the date thereof for the payment of all accrued and unpaid Taxes of any nature of Prolab, and any applicable Taxes owing by it to any foreign jurisdiction, whether or not assessed or disputed.  All Taxes and other assessments and levies which Prolab, is required to withhold or collect have been withheld and collected and have been paid over to the proper governmental authorities except where the failure to withhold or collect and pay over would not have a Material Adverse Effect on Prolab.  Neither the Internal Revenue Service nor any other governmental authority is now asserting or, is threatening to assert against Prolab any deficiency or claim for additional Taxes.  Except as set forth in Section 3.13 of the Disclosure Schedule, there has not been any audit of any tax return filed by Prolab or any of its Subsidiaries.  Except as set forth in Section 3.13 of the Disclosure Schedule, no waiver or agreement by Prolab.  Except as set forth in Section 3.13 of the Disclosure Schedule, no claim has ever been made by an authority in a jurisdiction where Prolab does not file tax returns that any of them is or may be subject to taxation by that jurisdiction.  Except as set forth in Section 3.13 of the Disclosure Schedule, there are no security interests on any of the assets of Prolab that arose in connection with any failure (or alleged failure) to pay any Tax.

Section 3.13 of the Disclosure Schedule lists all federal, state, local, and foreign income tax returns (including all schedules and attachments) filed with respect to Prolab or any

of its Subsidiaries for taxable periods ended on or after December 31, 1994. Prolab has delivered to Natrol correct and complete copies of all federal income tax returns, examination reports, and statements of deficiencies assessed against or agreed to by Prolab since December 31, 1994.

Prolab has not waived any statute of limitations in respect of Taxes or agreed to any extension of time with respect to a Tax assessment or deficiency.

Prolab has disclosed on its federal income Tax Returns all positions taken therein that could give rise to a substantial understatement of federal income Tax within the meaning of Section 6662 of the Code. Prolab is not a party to any Tax allocation or sharing agreement. Prolab (a) has not been a member of an affiliated group filing a consolidated federal income tax return or (b) has no liability for the Taxes of any Person under Treas. Reg. § 1.1502-6 (or any similar provision of state, local, or foreign law), as a transferee or successor, by contract, or otherwise.

Section 3.14. <u>Contracts and Commitments</u>.

(a) Except as set forth in Section 3.14 of the Disclosure Schedule, Prolab is not a party to or is not otherwise bound by any (i) employment contracts; (ii) stock redemption or purchase agreements; (iii) agreements providing for the indemnification of others against any liabilities (other than indemnification incidental to agreements entered into in the ordinary course of business) or the sharing of the tax liability of others; (iv) license agreements (as licensor or licensee); (v) distributor or sales representative or similar agreements with any Person; (vi) agreements with officers, directors, employees, or stockholders of Prolab or persons or organizations related to or affiliated with any such persons; (vii) leases; (viii) plans or contracts providing for bonuses, pensions, options, stock purchases, deferred compensation, retirement payments, profit sharing, collective bargaining or the like, or any contract or agreement with any labor union; (ix) agreements containing covenants limiting the freedom of Prolab to compete in any line of business or territory or with any person or entity; (x) indentures, mortgages, promissory notes, loan agreements, guaranties or other agreements or commitments for the borrowing of money or any related security agreements; (xi) any partnership, trust agreement, joint venture, or other similar contract, arrangement or agreement; (xii) any registration rights agreements, warrants, warrant agreements or other rights to subscribe for securities, any voting agreements, voting trusts, shareholder agreements or other similar arrangements or any stock purchase or repurchase agreements or stock restriction agreements; or (xiii) any other agreement, contract, commitment or similar arrangement which (A) based on the level of business over the past 12 months has provided for or involved payments by or imposed any liability or obligation of Prolab in excess of $25,000 per annum to any other Person or (B) based on the level of business over the past 12 months has provided for receipt by or created any right of Prolab to collect in excess of $25,000, other than agreements, contracts or commitments incidental to plans or products offered or sold by

15

Prolab which do not provide for annual receipts by Prolab or any of its Subsidiaries in excess of $50,000 including, without limitation, any proposal or commitment known to Prolab or the Stockholders with respect to any prospective client or customer relationship which will involve such amounts.

(b) All contracts, agreements, leases and instruments to which Prolab is a party or by which any of them is obligated are valid and are in full force and effect and constitute legal, valid and binding obligations of such company and, to the best knowledge of the Stockholders, enforceable in accordance with their respective terms. There is no notice or threat of termination or modification of any contracts, agreements or instruments listed in Section 3.14 of the Disclosure Schedule, which termination or modification is reasonably likely to have a Material Adverse Effect. Neither Prolab or any other party to any of the contracts, agreements or instruments listed in Section 3.14 of the Disclosure Schedule is in default in complying with any provisions thereof, and no condition or event or fact exists which, with notice, lapse of time or both would constitute a default thereunder on the part of Prolab or any other party thereto, except for any such default, condition, event or fact that, individually or in the aggregate, would not have a Material Adverse Effect.

(c) Prolab (i) has no liability for renegotiation of government contracts or subcontracts, (ii) has been suspended or debarred from bidding on contracts or subcontracts with any federal, state or local agency or governmental authority, (iii) has not been audited or investigated by any such agency or authority with respect to contracts entered into or goods and services provided by Prolab or (iv) has not had a contract terminated by any such agency or authority for default or failure to perform in accordance with applicable standards.

Section 3.15. Intellectual Property Rights.

(a) Except as described in Section 3.15 of the Disclosure Schedule, Prolab has exclusive ownership of, or exclusive license to use, all patent, copyright, trade secret, trademark, or other proprietary rights (collectively, "Intellectual Property") used or to be used in the business of Prolab as presently conducted or contemplated. All of the rights of Prolab in such Intellectual Property are freely transferable. There are no claims, demands or liens or encumbrances of any other kind by any person pertaining to any of such Intellectual Property and no proceedings have been instituted, or are pending or threatened, which challenge the rights of Prolab in respect thereof. Prolab has the right to use, free and clear of claims or rights of other persons, all customer lists, designs, manufacturing or other processes, computer software, systems, data compilations, research results and other information required for or incidental to its products or its business as presently conducted or contemplated.

(b) All patents, patent applications, trademarks, trademark applications and registrations and registered copyrights which are owned by or licensed to Prolab or used or to be used by Prolab in the Business as presently conducted or contemplated, and all other items

16

of Intellectual Property which are material to the business or operations of Prolab, are listed in Section 3.15 of the Disclosure Schedule. All of such patents, patent applications, trademark registrations, trademark applications and registered copyrights have been duly registered in, filed in or issued by the United States Patent and Trademark Office, the United States Register of Copyrights or the corresponding offices of other jurisdictions as identified on said Disclosure Schedule, and have been properly maintained and renewed in accordance with all applicable provisions of law and administrative regulations of the United States and each such jurisdiction.

(c)    All licenses or other agreements, including all amendments thereto, under which Prolab is granted rights in Intellectual Property are listed in Section 3.15 of the Disclosure Schedule. All said licenses or other agreements are in full force and effect, there is no material default by any party thereto or notice of any claim of any failure of compliance in respect thereto, and, except as set forth on Section 3.15 of the Disclosure Schedule, all of the rights of Prolab thereunder are freely assignable. To the knowledge of Company, the licensors under said licenses and other agreements have and had all requisite power and authority to grant the rights purported to be conferred thereby and Prolab has no knowledge that any licensor is insolvent, has committed an act of bankruptcy or is bankrupt. True and complete copies of all such licenses or other agreements have been provided to Buyers.

(d)    All licenses or other agreements, including all amendments thereto, under which Prolab has granted rights to others in Intellectual Property owned or licensed by Prolab are listed in Section 3.15 of the Disclosure Schedule. All of said licenses or other agreements are in full force and effect, there is no material default by any party thereto, and, except as set forth on Section 3.15 of the Disclosure Schedule, all of the rights of Prolab thereunder are freely assignable by Prolab. True and complete copies of all such licenses or other agreements have been provided to Buyers.

(e)    Prolab has taken all steps required in accordance with sound business practice to establish and preserve its ownership of all Intellectual Property rights with respect to its products, services and technology. Prolab has required all professional and technical employees and other employees having access to valuable non-public information of Prolab, to execute agreements under which such employees are required to convey to Prolab ownership of all inventions and developments conceived or created by them in the course of their employment and to maintain the confidentiality of all such information of Prolab. Prolab has not made any such information available to any person other than employees of Prolab except pursuant to written agreements requiring the recipients to maintain the confidentiality of such information and appropriately restricting the use thereof. Except as set forth in Section 3.15 of the Disclosure Schedule, Prolab has no knowledge of any infringement by others of any Intellectual Property rights of Prolab.

(f) The present and contemplated business, activities and products of Prolab do not infringe any Intellectual Property of any other person. No proceeding charging Prolab with infringement of any adversely held Intellectual Property has been filed or is threatened to be filed. There exists no unexpired patent or patent application which includes claims that would be infringed by or otherwise adversely affect the products, activities or business of Prolab. Prolab is not making unauthorized use of any confidential information or trade secrets of any person, including without limitation, any former employer of any past or present employee of Prolab. Except as set forth in Section 3.15 of the Disclosure Schedule, neither Prolab nor, to the knowledge of Prolab and the Stockholders, any of their employees have any agreements or arrangements with any persons other than Prolab related to confidential information or trade secrets of such persons or restricting any such employee's ability to engage in business activities of any nature. The activities of their employees on behalf of Prolab do not violate any such agreements or arrangements known to Prolab.

(g) Prolab has reviewed the areas within its businesses and operations which could be adversely affected by, and has developed a program to address on a timely basis, the "Year 2000 Problem" (i.e., the risk that applications used by Prolab or its suppliers and/or providers may be unable to recognize and properly perform date-sensitive functions involving certain dates prior to and any date after December 31, 1999). Prolab and the Stockholders reasonably believe that the "Year 2000 Problem" will not have any material adverse effect on the business or operations of Prolab.

Section 3.16. <u>Litigation: Product Warranty Claims</u>. Except as set forth on Section 3.16 of the Disclosure Schedule, there is no litigation or governmental or administrative proceeding or investigation pending or, to the best knowledge of the Stockholders, threatened against Prolab or affecting any of its properties or assets, or against any officer, director or stockholder or key employee of Prolab which, if adversely determined, may have a Material Adverse Effect, or which may call into question the validity or hinder the enforceability or performance of this Agreement or the agreements and transactions contemplated hereby; nor has there occurred any event nor does there exist any condition on the basis of which any such claim is reasonably likely to be asserted. There are no existing or threatened product liability, warranty or other similar claims, or any facts upon which a material claim of such nature could be based, against the Prolab for products or services which are defective or fail to meet any product or service warranties except as disclosed in Section 3.15 of the Disclosure Schedule. No claim has been asserted against Prolab for renegotiation or price redetermination of any business transaction, and there are no facts upon which any such claim could be based. No product distributed by Prolab is adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, or is an article which may not under the provisions of Section 505 of such Act be introduced into interstate commerce.

Section 3.17. <u>Permits: Compliance with Laws</u>. Except as set forth in Section 3.17 of the Disclosure Schedule, Prolab has all necessary franchises, authorizations, approvals, orders,

18

consents, licenses, certificates, permits, registrations, qualifications or other rights and privileges (collectively "Permits") necessary to permit it to own its properties and to conduct its businesses as the same are presently conducted or proposed to be conducted and all such Permits are valid and in full force and effect except for Permits the absence of which would have a Material Adverse Effect. No Permit is subject to termination as a result of the execution of the Agreement or consummation of the transactions contemplated hereby. Prolab is now and has heretofore been in compliance with, and has not received any notice of any failure to comply with, all applicable statutes, ordinances, orders, rules and regulations promulgated by any federal, state, municipal or other governmental authority which apply to the conduct of its Business, including, but not limited to the Federal Food, Drug and Cosmetic Act, Federal Trade Commission Act, Fair Packaging and labeling Act, Consumer Product Safety Act, Toxic Substances Control Act, Emergency Planning and Community Right-To-Know Act as well as regulations promulgated thereunder. Prolab has never entered into or been subject to any judgment, consent decree, compliance order or administrative order with respect to any federal, state or municipal law or received any request for information, notice, demand letter, administrative inquiry or formal or informal investigation, complaint or claim with respect to any matter or the enforcement of any such law. Prolab has provided Natrol with copies of all documents, including correspondence, received from or sent to any federal, state or local agency or authority relating to Prolab or its products and all documents discussing or relating to complaints from Prolab's competitors regarding claims relating to products distributed by Prolab inquiries by the National Advertising Division of the Better Business Bureau.

Section 3.18. Inventories. Prolab's inventory items are of a quality and quantity salable in the ordinary course of its business and Prolab maintains adequate inventory reserves. The inventories stated in the Base Balance Sheet reflect the normal inventory valuation policies of Prolab and are based on and consistent with Prolab's inventory records, and in the reasonable judgment of Seller are properly valued. Since the date of the Base Balance Sheet, no inventory items have been sold or disposed of except through sales in the ordinary course of business, on the whole, at profit margins consistent with Prolab's experience in prior years.

Section 3.19. Labor Laws. As of the date hereof, Prolab employs 37 full-time and one part-time employees and except as set forth in Section 3.19 of the Disclosure Schedule generally enjoy a good employer-employee relationship. Prolab is not delinquent in payments to any of its employees for any wages, salaries, commissions, bonuses or other direct compensation for any services performed for it to the date hereof or amounts required to be reimbursed to such employees. Except as set forth in Section 3.19 of the Disclosure Schedule there are no charges of employment discrimination or unfair labor practices or strikes, slowdowns, stoppages of work, or any other concerted interference with normal operations existing, pending or threatened against or involving any of Prolab or any of their respective Subsidiaries. No question concerning representation exists respecting any group of employees of Prolab or its Subsidiaries. Except as set forth in Section 3.19 of the Disclosure Schedule

there are no claims or charges relating to or alleging sexual harassment or discrimination existing, pending or threatened against Prolab or has there occurred any event or does there exist any condition on the basis of which any such claim is reasonably likely to be asserted. Prolab and its Subsidiaries are, and at all times since November 6, 1986 have been, in compliance in all material respects with the requirements of the Immigration Reform Control Act of 1986.

Section 3.20. Information Supplied to Natrol. Neither this Agreement (including the Disclosure Schedule) nor any document referenced herein, nor any certificate or statement furnished pursuant to or in connection with this Agreement by or on behalf of Prolab, when taken together contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein not misleading. There is no material fact directly relating to the business, operations or condition of Prolab (other than facts which relate to general economic or nationwide industry trends or conditions) that has a Material Adverse Effect or, to the best knowledge of Prolab and the Stockholders, in the future is reasonably likely to (so far as may now be reasonably foreseen based upon material facts of which Prolab or any of the Stockholders are now aware) have a Material Adverse Effect that has not been set forth in this Agreement or in the Disclosure Schedule. Except as disclosed in Section 3.20 of the Disclosure Schedule, none of the Stockholders or any of the officers or directors of Prolab has been (a) subject to voluntary or involuntary petition under the federal bankruptcy laws or any state insolvency law or the appointment of a receiver, fiscal agent or similar officer by a court for his business or property; (b) convicted in a criminal proceeding or named as a subject of a pending criminal proceeding (excluding traffic violations and other minor offenses) or been otherwise accused of any act of moral turpitude; (c) subject to any order, judgment, or decree (not subsequently reversed, suspended or vacated) of any court of competent jurisdiction permanently or temporarily enjoining him from, or otherwise imposing limits or conditions on his, engaging in any securities, investment advisory, banking, insurance or other type of business or acting as an officer or director of a public company; or (d) found by a court of competent jurisdiction in a civil action or by the Securities and Exchange Commission or the Commodity Futures Trading Commission to have violated any federal or state commodities, securities or unfair trade practices law, which such judgment or finding has not been subsequently reversed, suspended, or vacated. None of Prolab or any Stockholder has ever made any illegal payment or contribution of any kind, directly or indirectly, including, without limitation, payments, gifts or gratuities, to United States or foreign national, state or local government officials, employees or agents or candidates therefor.

Section 3.21. Investment Banking; Brokerage. There are no claims for investment banking fees, brokerage commissions, finder's fees or similar compensation (exclusive of professional fees of lawyers and accountants) in connection with the transactions contemplated by this Agreement based on any arrangement or agreement made by or on behalf of Prolab or any Stockholder.

Section 3.22. Employee Benefit Programs.

(a) Section 3.22 of the Disclosure Schedule sets forth a list of every Employee Program (as defined below) that has been maintained (as such term is further defined below) by Prolab at any time prior to the Closing Date.

(b) Except as set forth in Section 3.22 of the Disclosure Schedule, each Employee Program which has at any time been intended to qualify under Section 401(a) or 501(c)(9) of the Internal Revenue Code of 1986, as amended (the "Code"), has received a favorable determination or approval letter from the Internal Revenue Service ("IRS") regarding its qualification under such section and has, in fact, been qualified under the applicable section of the Code from the effective date of such Employee Program through and including the Closing (or, if earlier, the date that all of such Employee Program's assets were distributed). No event or omission has occurred which would cause any such Employee Program to lose its Qualification under the applicable Code section.

(c) Except as set forth in Section 3.22 of the Disclosure Schedule, there has not been any failure of any party to comply with any laws applicable with respect to the Employee Programs. With respect to any Employee Program, there has occurred no "prohibited transaction," as defined in Section 406 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or Section 4975 of the Code, or breach of any duty under ERISA or other applicable law (including, without limitation, any health care continuation requirements or any other tax law requirements, or conditions to favorable tax treatment, applicable to such plan), which could result, directly or indirectly (including without limitation through any obligation of indemnification or contribution), in any taxes, penalties or other liability to Prolab or any Affiliate (as defined below). No litigation, arbitration, or governmental administrative proceeding (or investigation) or other proceeding (other than those relating to routine claims for benefits) is pending or, to the best knowledge of the Stockholders, threatened with respect to any such Employee Program.

(d) With respect to each Employee Program within the three years preceding the date hereof, complete and correct copies of the following documents (if applicable to such Employee Program) have previously been delivered to Natrol: (i) all documents embodying or governing such Employee Program, and any funding medium for the Employee Program (including, without limitation, trust agreements) as they may have been amended through the date hereof; (ii) the most recent IRS determination or approval letter with respect to such Employee Program under Code Section 401 or 501(c)(9), and any applications for determination or approval subsequently filed with the IRS; (iii) the three most recently filed IRS Forms 5500, with all applicable schedules and accountants' opinions attached thereto; (iv) the summary plan description for such Employee Program (or other descriptions of such Employee Program provided to employees) and all modifications thereto; (v) any insurance policy (including any fiduciary liability insurance policy) related to such Employee Program;

21