LEXSEE 2001 CONN. SUPER. LEXIS 3392

Pas Associates v. Twin Laboratories, Inc.

CV990174428S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF
STAMFORD-NORWALK, AT STAMFORD

*2001 Conn. Super. LEXIS 3392*

December 5, 2001, Decided
December 5, 2001, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee brought an action for breach of contract and promissory estoppel against defendant employer. The employee filed a request for production. The employer claimed the requested documents were protected by the attorney-client privilege, the work product doctrine, or both. The employee filed a motion for an order of compliance with respect to the document.

**OVERVIEW:** The employee argued that the employer bears the burden of proving the existence and applicability of the attorney-client privilege or the work product rule. The employee also contended that the privileges claimed by the employer were either non-existent, inapplicable, or had been waived by the employer. The employer, in turn, argued that all of 43 documents at issue were protected by the attorney-client privilege, that 26 of those documents were also protected by the attorney work product privilege, and that the employer's privilege log properly provided as much information to the employee as possible without waiving the privileges at issue. The superior court noted that neither the employer's privilege log nor its memorandum explained why each of the 43 documents was protected from disclosure by the attorney-client privilege or the work product rule. Furthermore, the superior court noted that the employer's assertion that the documents should have been withheld on the grounds of privilege or work product was unsupported by affidavits or other evidence detailing the facts giving rise to the applicability of these doctrines.

**OUTCOME:** The employee's motion for an order of compliance was granted in part and denied in part.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN1] Communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN2] In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act upon it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. The privilege fosters full and frank communications between attorneys and their clients and thereby promotes the broader public interests in the observation of law and the administration of justice.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN3] The attorney-client privilege is strictly construed because it tends to prevent a full disclosure of the truth in court.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN4] Since the attorney-client privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN5] A communication from attorney to client solely regarding a matter of fact is not ordinarily be privileged unless it is shown to be inextricably linked to the giving of legal advice.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN6] Although statements made in the presence of a third party are usually not privileged because there is then no reasonable expectation of confidentiality, the Connecticut Supreme Court has recognized that the presence of certain third parties who are agents or employees of an attorney or client, and who are necessary to the consultation, will not destroy the confidential nature of the communications.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN7] The attorney-client privilege extends to interpreters, and to clerks and agents employed by the attorney in the business committed to his or her charge.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN8] The attorney-client privilege protects communications where the client is an organization, such as a corporate entity, rather than an individual. Thus, the attorney-client privilege applies to in-house counsel.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN9] The attorney-client privilege applies to communications between officials or employees of a corporate entity and the attorney for that entity, provided the following conditions are met: (1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN10] The burden rests upon the party invoking the attorney-client privilege to establish the elements required for its application.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*
[HN11] Where voluminous communications between attorney and client are memorialized, the parties must inform the court about the pertinent circumstances without disclosing the substance of the information sought to be protected. One means of providing information is by use of a privilege log and affidavits. The log can identify (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated. In some cases, privilege logs have been required to describe, for each document withheld on the grounds of privilege or work product, information pertaining to the type of document, the number, date, author, addressee, recipients of copies, the subject matter as well as the legal basis for withholding the document.

*Civil Procedure > Disclosure & Discovery > Work Product*
[HN12] Work product can be defined as the result of an attorneys activities when those activities have been conducted with a view to pending or anticipated litigation.

*Civil Procedure > Disclosure & Discovery > Work Product*
[HN13] The work product rule protects an attorneys interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible items. The burden of establishing that the information sought constitutes attorney work product is upon the party asserting such a claim.

*Civil Procedure > Disclosure & Discovery > Work Product*
[HN14] See Conn. Gen. Prac. Book, R. Super. Ct. § 13-3.

*Civil Procedure > Disclosure & Discovery > Work Product*
[HN15] In order to fall within Connecticut's narrow definition of work product, attorney involvement in procuring or creating the material must be demonstrated. The attorneys work must have formed an essential step in

the procurement of the data which the opponent seeks, and the attorney must have performed duties normally attended to by attorneys. Thus, the lack of involvement of counsel in securing the requested information bars the application of the work-product privilege to the requested information. Furthermore, the work product doctrine does not protect facts learned from documents or other items.

*Civil Procedure > Disclosure & Discovery > Work Product*
[HN16] Documents prepared in ordinary course of business are discoverable under Conn. Gen. Prac. Book, R. Super. Ct. § 13-2, while work-product materials prepared in anticipation of litigation or for trial are only discoverable upon a showing of substantial need and undue hardship, pursuant to Conn. Gen. Prac. Book, R. Super. Ct. § 13-3.

**JUDGES:** MINTZ, J.

**OPINIONBY:** MINTZ

**OPINION:** *MEMORANDUM OF DECISION RE MOTION FOR ORDER OF COMPLIANCE # 129*

The plaintiff, Philip A. Schiavoni d/b/a PAS Associates, brought this action for breach of contract and promissory estoppel against the defendant, Twin Laboratories, Inc. n1 The plaintiff's revised amended complaint (complaint) dated February 11, 2000, alleges the following pertinent facts. On or about May 20, 1998, the plaintiff and the defendant entered into a contract for services (hereinafter, engagement letter), pursuant to which the plaintiff was to be employed for an initial term of eight months. During such employment, the plaintiff was to be responsible for the day-to-day operation and management of a catalog business known as Bronson Laboratories, Inc. (Bronson), a wholly owned subsidiary of the defendant. Thereafter, the engagement letter was amended by the parties to extend its duration to the full calendar year of 1999 and to expand the scope of the work to be performed by the plaintiff. Since the end of 1998, [*2] the work done by the plaintiff for Bronson and/or the defendant was undertaken in good faith reliance upon amendments to the engagement letter. In May of 1999, the plaintiff was advised that the defendant had hired Thomas Schinick (Schinick) as president of Bronson, and the defendant, acting through its executive vice president, Dean Blechman (Blechman), reaffirmed the defendant's commitment to the plaintiff for 1999. Thereafter, the defendant allegedly failed to make payments to the plaintiff and the relationship between the parties deteriorated.

n1 This action has been consolidated for trial with the related action bearing the caption: *Twin Laboratories, Inc. v. Schiavoni,* Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV 00-0175769.

Pursuant to Practice Book § 13-9, the plaintiff filed a request for production of documents n2 and in response, on February 22, 2000, the defendant filed an objection. In its objection, the defendant claims that certain documents requested [*3] by the plaintiff are protected by the attorney-client privilege, the work product doctrine, or both. On May 10, 2001, pursuant to Practice Book § 13-14, the plaintiff filed a motion for an order of compliance with respect to those documents in the plaintiff's request for production which the defendant claims are exempt from discovery. The plaintiff contends that fundamental evidence contained in the documents will establish essential elements of the contract between the parties and, will disprove the defendant's special defense to the effect that, since 1999, the defendant's retention of the plaintiff was on a month-to-month basis. By agreement of counsel, the defendant prepared a privilege log identifying forty-three documents it claims are exempt from discovery by virtue of the attorney-client privilege and/or the work product privilege. The defendant submitted copies of the forty-three documents identified in its privilege log to this court. The plaintiff requests that this court conduct a review of the documents and make a determination as to whether the privileges asserted by the defendant are applicable.

n2 The plaintiff's request for production requests that the defendant produce for inspection and examination certain documents and other materials from the period of May 1, 1998, through December 31, 1999.

[*4]

The parties have filed memoranda of law in support of their respective positions regarding the plaintiff's motion for an order of compliance. The plaintiff argues that the defendant bears the burden of proving the existence and applicability of the privileges. The plaintiff contends that the privileges claimed by the defendant are either nonexistent, inapplicable or have been waived by the defendant. Furthermore, as to the defendant's privilege log, the plaintiff maintains that the defendant's description of the subject matter and legal basis for withholding the relevant documents are so general as to preclude the plaintiff from any meaningful analysis and argument. The plaintiff concludes that the defendant should be required to express its rationale for the

privileges it claims, in order to allow for a meaningful response and judicial analysis. The defendant, in turn, argues that all of forty-three documents at issue are protected by the attorney-client privilege, n3 that twenty-six of those documents are also protected by the attorney work product privilege, n4 and that the defendant's privilege log properly provides as much information to the plaintiff as possible without [*5] waiving the privileges at issue.

> n3 In its memorandum, the defendant asserts that like many sizeable companies, it has many in-house attorneys, two of whom are Joseph Conklin and Phil Kazin. The defendant further asserts that its employees frequently communicate with the in-house attorneys on a variety of legal matters, including corporate and litigation matters. The defendant argues that the legal advice provided by attorneys Conklin and Kazin is protected by the attorney-client privilege. Furthermore, the defendant argues generally, that each of the forty-three documents at issue was either prepared by Conklin or Kazin with the expectation that it remain confidential and privileged, or was directed to those attorneys by the defendant's employees with the same expectation. Therefore, the defendant concludes that all of the documents at issue are protected from disclosure by the attorney-client privilege.

> n4 The defendant argues that the twenty-six documents it claims are protected from disclosure by the work product privilege were created in anticipation of litigation. The defendant asserts that by 1999, the relationship between the plaintiff and the defendant had broken down and that nearly all of the work product documents were created in 1999. Furthermore, the defendant contends that the documents numbered as thirty-three through thirty-seven in the privilege log are attorney notes that were created on or after the date that the defendant terminated its relationship with the plaintiff and that by late May of 1999, there was a strong likelihood of litigation between the plaintiff and the defendant. Consequently, the defendant concludes that twenty-six documents are protected from disclosure by the attorney work product privilege.

[*6]

This court has conducted an in camera review of the documents. For the reasons set forth below, the plaintiff's motion for an order of compliance is granted in part and denied in part.

*Discussion*

*Attorney-Client Privilege*

As a general rule, [HN1] communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. *Olson v. Accessory Controls & Equipment Corp., 254 Conn. 145, 157, 757 A.2d 14 (2000).* "On numerous occasions [the Connecticut Supreme Court has] reaffirmed the importance of the attorney-client privilege and [has] recognized the long-standing, strong public policy of protecting attorney-client communications . . . [HN2] In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act upon it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice . . . The privilege fosters full and frank communications between attorneys and their clients and thereby promotes the broader public interests in the observation of law and [the] [*7] administration of justice." (Citations omitted; internal quotation marks omitted.) *254 Conn. at 156-57.*

" [HN3] The attorney-client privilege is strictly construed because it tends to prevent a full disclosure of the truth in court." (Internal quotation marks omitted.) *Ullmann v. State, 230 Conn. 698, 710-11, 647 A.2d 324 (1994).* "Although [the Connecticut Supreme Court has] noted previously that the attorney-client privilege reflects a significant public policy, and that it is important not to weaken the privilege with various exceptions because . . . even the threat of disclosure would have a detrimental effect on attorneys ability to advocate for their clients while preserving their ethical duty of confidentiality, . . . [the Court also has] recognized that [HN4] since the [attorney-client] privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose . . ." (Citations omitted; internal quotation marks omitted.) *Olson v. Accessory Controls & Equipment Corp., supra, 254 Conn. at 170.*

As noted above, as a general rule, communications between client and attorney [*8] are privileged when made in confidence for the purpose of seeking legal advice. *254 Conn. at 157.* However, "[ [HN5] a] communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice." *Id.* "Moreover, [HN6] although . . . statements made in the presence of a third party are usually not privileged because there is then no

reasonable expectation of confidentiality . . . [the Connecticut Supreme Court has] recognized that the presence of certain third parties . . . who are agents or employees of an attorney or client, and who are necessary to the consultation, will not destroy the confidential nature of the communications." (Citations omitted; internal quotation marks omitted.) *254 Conn. at 157-58;* accord *Shew v. Freedom of Information Commission, 245 Conn. 149, 159 n.12, 714 A.2d 664 (1998)* ("a person making a privileged communication to a lawyer for an organization must then be acting as agent of the principal-organization"). "Appropriately, [HN7] the attorney-client privilege extends to interpreters, and to clerks and agents employed by the [*9] attorney . . . in the business committed to his [or her] charge." (Internal quotation marks omitted.) *Olson v. Accessory Controls & Equipment Corp., supra, 254 Conn. at 158.*
[HN8]
The attorney-client privilege protects communications where the client is an organization, such as a corporate entity, rather than an individual. See *Shew v. Freedom of Information Commission, supra, 245 Conn. at 158;* see e.g., *Olson v. Accessory Controls & Equipment Corp., supra, 254 Conn. at 157.* Thus, the attorney-client privilege applies to in-house counsel. *International Business Machines Corporation v. Murray,* Superior Court, judicial district of Stamford, Docket No. 107445 (June 29, 1990) (Lewis, J.) (2 Conn. L. Rptr. 56, 58-59). The Connecticut Supreme Court has held that [HN9] the privilege applies to communications between officials or employees of a corporate entity and the attorney for that entity, provided the following conditions are met: "(1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must [*10] relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence." (Internal quotation marks omitted.) *Cadlerock Properties v. Commissioner, 253 Conn. 661, 675 n.13, 757 A.2d 1 (2000),* cert. denied, *531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001); Shew v. Freedom of Information Commission, supra, 245 Conn. at 158.*
[HN10]
The burden rests upon the party invoking the privilege to establish the elements required for its application. *Kowalonek v. Bryant Lane Inc., 2000 Conn. Super. LEXIS 957,* Superior Court, judicial district of Danbury, Docket No. 324942 (April 11, 2000) (Moraghan, J.); see also *Babcock v. Bridgeport Hospital, 251 Conn. 790, 848, 742 A.2d 322 (1999)* ("where the status of a document cannot be discerned from the face of a discovery request . . . the party opposed to discovery has the burden of both asserting and establishing the applicable privilege"); *State v. Hanna, 150 Conn. 457, 466, 191 A.2d 124 (1963)* ("the burden of proving the facts essential to the [attorney-client] privilege is on the person asserting it"). "While the law is clear that the [*11] party asserting the attorney-client privilege has the burden of proving that the privilege applies, the law is not clear on *what* must be shown." (Emphasis added.) *Shareamerica, Inc. v. Ernst & Young, 1998 Conn. Super. LEXIS 463,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 307132 (February 20, 1998) (Thim, J.). n5

n5 "The following questions appear to be relevant: Was the communication made for the purpose of facilitating the rendition of professional services to the corporation? Did the maker of the communication intend that it not be disclosed to persons other than those necessary for the furtherance of legal services to the corporation? Was the information treated as confidential within the corporation? Was the communication made or received by a person having authority to obtain legal services for the corporation or to act on advice thereby rendered on behalf of the corporation? Was the communication made or received by a corporate employee during the course of the person's employment and for the purpose of effecting legal representation of the corporation? Was the communication made or received by a lawyer representing the corporation or by a person employed by the lawyer to assist the lawyer in rendering professional legal services to the corporation." *Shareamerica, Inc. v. Ernst & Young, 1998 Conn. Super. LEXIS 463,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 307132 (February 20, 1998) (Thim, J.).

[*12]

" [HN11] Where voluminous communications are memorialized, the parties must inform the court about the pertinent circumstances without disclosing the substance of the information sought to be protected. One means of providing information is by use of a privilege log and affidavits. The log can identify '(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.'" *Id.,* quoting *In re Grand Jury Investigation United States v. The Corporation, 974 F.2d 1068, 1071 (9th Cir. 1992).* In some cases, privilege logs have been required to describe, "for each document

withheld on the grounds of privilege or work product, information pertaining to the type of document, the number, date, author, addressee, recipients of copies, *the subject matter as well as the legal basis for withholding the document.*" (Emphasis added.) *Carrier Corp. v. Home Insurance Co., 793 F. Supp. 660,* Superior Court, judicial district of Hartford/New Britain [*13] at Hartford (1992) (Schaller, J.) (6 Conn. L. Rptr. 478, 7 C.S.C.R. 823).

This court notes, preliminarily, that the defendant's privilege log identifies the forty-three documents it withholds, n6 and for most of the documents, it lists the following information: the date of the document; the document type; the author or authors of the document; the recipient or recipients of the document; any parties who were "cc'd"; a brief description of the subject of the document; and the defendant's "basis for withholding" the document. Regarding the defendant's description of its legal "basis for withholding" each document, the privilege log merely labels each document as "A/C" (attorney-client), "W/P" (work product), or both. This court notes that neither the defendant's privilege log nor its memorandum explains *why each* of the forty-three documents is protected from disclosure by the attorney-client privilege or the work product rule. Furthermore, this court notes that the defendant's assertion that the documents must be withheld on the grounds of privilege or work product is unsupported by any affidavits or other evidence detailing the facts giving rise [*14] to the applicability of these doctrines.

> n6 The numbering of the documents listed in the defendant's privilege log was done by the plaintiff to facilitate analysis.

Applying all the principles above to the present case, this court is satisfied that the documents identified in the defendant's privilege log bearing the numbers one, two, twenty-three, twenty-five, twenty-six and thirty-seven are communications between officials or employees of the defendant, a corporate entity, and the attorney for that entity, under circumstances where (1) the attorney was acting in a professional capacity for the defendant, (2) the communications were made between the attorney and the current employees or officials of the defendant, (3) the communications relate to legal advice sought from the attorney, and (4) the communications were made in confidence. See *Cadlerock Properties v. Commissioner, supra,* 253 Conn. at 675 n.13; *Shew v. Freedom of Information Commission, supra,* 245 Conn. at 158. [*15] This court is not satisfied, however, that the documents identified in the defendant's privilege log bearing the numbers seven, fourteen, fifteen, nineteen, twenty-seven, thirty-six, thirty-eight and forty are communications between officials or employees of the defendant and the attorney for that entity. Moreover, this court is not satisfied that the documents identified in the defendant's privilege log bearing the numbers four, five, six, eight, nine, ten, eleven, twelve, thirteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty-one, twenty-two, twenty-eight, twenty-nine, thirty, thirty-two, thirty-three, thirty-four, thirty-five, thirty-eight, thirty-nine, forty, forty-one, forty-two and forty-three are communications relating to the giving or receiving of legal advice; and furthermore, this court is not satisfied that the documents identified in the defendant's privilege log bearing the numbers three, six, nine, ten, thirteen, eighteen, twenty, twenty-one, twenty-two, twenty-four, thirty-nine and forty-one are communications that were made in confidence.

*Work Product Rule*

The attorney work product doctrine in Connecticut is set forth in Practice Book § 13-3. n7 [*16] " [HN12] Work product can be defined as the result of an attorneys activities when those activities have been conducted with a view to pending or anticipated litigation." (Internal quotation marks omitted.) *Ullmann v. State,* 230 Conn. 698, 714-15, 647 A.2d 324 (1994); accord *Richards Corp. v. Semac Electrical,* Superior Court, judicial district of New Britain, Docket No. 476427 (August 10, 1999) (Robinson, J.). " [HN13] The work product rule protects an attorneys interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs and countless other tangible and intangible items." (Internal quotation marks omitted.) *Ullmann v. State, supra,* 230 Conn. at 714. "The burden of establishing that the information sought constitutes attorney work product is upon the party asserting such a claim." *Seville v. KDI Sylvan Pools, Inc., 1994 Conn. Super. LEXIS 340,* Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 129702 (February 9, 1994) (Mottolese, J.).

> n7 [HN14] Practice Book 13-3 provides, in pertinent part that a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials [prepared in anticipation of litigation] when the required

showing has been made, the judicial authority shall not order disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Practice Book § 13-3(a). "This so-called attorneys 'work product' rule is not an evidentiary privilege but a rule of discovery." C. Tait & J. LaPlante, Connecticut Evidence (3d Ed. 2001) § 5.22.2, p. 317.

[*17]

" [HN15] In order to fall within Connecticut's narrow definition of work product, attorney involvement in procuring or creating the material must be demonstrated." *Tracanna v. Midstate Medical Center*, 2001 Conn. Super. LEXIS 1630, Superior Court, judicial district of New Haven at New Haven, Docket No. 443739 (June 12, 2001) (Lager, J.). "The attorneys work must have formed an essential step in the procurement of the data which the opponent seeks, and the attorney must have performed duties normally attended to by attorneys." *Stanley Works v. New Britain Redevelopment Agency*, 155 Conn. 86, 95, 230 A.2d 9 (1967); accord *Barksdale v. Harris*, 30 Conn. App. 754, 761, 622 A.2d 597, cert. denied, 225 Conn. 927, 625 A.2d 825 (1993). Thus, "the lack of involvement of counsel in securing the requested information bars the application of the work-product privilege to the requested information." (Internal quotation marks omitted.) *Ippoliti v. Town of Ridgefield*, 2000 Conn. Super. LEXIS 2020, Superior Court, judicial district of Danbury, Docket No. 337600 (August 7, 2000) (Moraghan, J.) (27 Conn. L. Rptr. 629). Furthermore, the work product doctrine does not protect facts learned from documents or other [*18] items. See *Robarge v. Patriot General Ins. Co.*, 42 Conn. Supp. 164, 166, 608 A.2d 722, 6 Conn. L. Rptr. 186 (1992). Moreover, "there is no shield against discovery of the facts that the opponent has acquired or the person from whom the facts were obtained." *Ippoliti v. Town of Ridgefield, supra*, 2000 Conn. Super. LEXIS 2020, 27 Conn. L. Rptr. 629.

"Courts have looked at several factors in evaluating the primary purpose for the preparation of the materials in question. First, a document prepared in the ordinary course of business is not prepared in anticipation of litigation . . . The courts have also looked at the temporal proximity of the litigation and the likelihood of litigation." (Citation omitted.) *Cloutier v. Liberty Mutual Insurance*, 1998 Conn. Super. LEXIS 593, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 278184 (March 6, 1998) (Mottolese, J.) (21 Conn. L. Rptr. 72), aff'd per curiam, 60 Conn. App. 904, 759 A.2d 1056, cert. denied, 255 Conn. 919, 763 A.2d 1040 (2000); see also *Ippoliti v. Town of Ridgefield, supra*, 2000 Conn. Super. LEXIS 2020, 27 Conn. L. Rptr. 629 (stating that [HN16] documents prepared in ordinary course of business are discoverable under Practice Book § 13-2, while [*19] work-product materials prepared in anticipation of litigation or for trial are only discoverable upon a showing of substantial need and undue hardship, pursuant to Practice Book § 13-3).

Applying the principles above to the present case, this court is satisfied that the documents identified in the defendant's privilege log bearing the numbers seven, twenty-seven and thirty-five were prepared in anticipation of litigation or for trial. This court is not satisfied, however, that the documents identified in the defendant's privilege log bearing the numbers three, eight, nine, ten, fourteen, fifteen, eighteen, nineteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-five, twenty-six, twenty-nine, thirty-three, thirty-four, thirty-six, thirty-seven, thirty-eight, forty and forty-two were prepared in anticipation of litigation or for trial, rather than in the ordinary course of the defendant's business or another manner similarly unprotected by the work product rule.

Additionally, this court notes that the defendant has not asserted any specific argument or basis for withholding the document identified in its privilege log as document number thirty-one, and [*20] its basis for withholding the document is not patently discernible to this court. See generally *Babcock v. Bridgeport Hospital, supra*, 251 Conn. at 848 ("where the [privileged or protected] nature of a document is not patently discernible from the face of the discovery request . . . the burden of establishing immunity from discovery rests with the party asserting the privilege"). Consequently, this court finds that the defendant has not met its burden of establishing any basis for withholding this document.

*Conclusion*

In summary, this court finds that the following documents are protected from disclosure by the attorney-client privilege: those enumerated in the defendant's privilege log as one, two, twenty-three, twenty-five, twenty-six and thirty-seven. Consequently, the plaintiff's motion for an order of compliance is denied as to these documents. Furthermore, this court finds that the following documents are protected from disclosure by the attorney work-product rule: those enumerated in the defendant's privilege log as seven, twenty-seven and thirty-five. Consequently, the plaintiff's motion is denied as to these documents. See generally, Practice [*21] Book § 13-3. Accordingly, the plaintiff's motion for an

order of compliance is granted with respect to all other documents identified in the defendant's privilege log, as this court finds that the defendant has neither established the applicability of the attorney-client privilege nor the work product rule to the remainder of the documents in dispute. Therefore, this court hereby orders compliance in accordance with this decision on or before January 4, 2002.

MINTZ, J.