# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

THOMAS E. ROARK, JOHN MORIN  
and DWIGHT OTIS,

        Plaintiffs,

V.

NATROL, INC. and  
ANDREW M. ESPOSITO, JR.,

        Defendants.

CIVIL ACTION NO.  
3:01CV02415 (AVC)

NOVEMBER 21, 2003

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFF'S
## MOTION TO COMPEL

The plaintiffs in the above entitled matter have moved the Court to compel defendant Natrol, Inc. to produce certain documentation in connection with the "due diligence" that it conducted prior to its acquisition of Prolab Nutrition, Inc. on October 8, 1999. In particular, regarding the period of time prior to its acquisition of Prolab, defendant Natrol should be compelled to disclose any internal analysis of, or opinion letters provided to it concerning, Prolab's labeling of its products and/or the efficacy of Prolab's products and whether or not the products of Prolab were compliant with applicable federal and state laws, together with all correspondence related thereto.

1

In its Counterclaim, defendant Natrol alleges that the plaintiffs breached certain representations and warranties regarding Prolab's products.  The documents sought by way of the Motion to Compel go directly to the issue of whether defendant Natrol actually relied upon those representations and warranties.

In opposing the plaintiffs' Motion to Compel, defendant Natrol asserts (1) that evidence of their lack of reliance on the representations and warranties is not material to its breach of contract claim (Natrol's Opposition at pp. 6-8), and (2) that it has not placed its due diligence communications "at issue" (Natrol's Opposition at pp. 8-10).  However, Natrol is wrong on both accounts.

Applicable Connecticut case law recognizes that proof of reliance is essential to the kind of contract claim that has been asserted in Natrol's counterclaim.  In Criteria II, Ltd. v. Co Opportun<u>ity Precision Wood Products, Inc.</u>, 2001 WL 1178333 (Conn. Superior Ct. August 30, 2001) (copy attached), the court held that a complaint that failed to allege reliance on the purported warranty failed to state a legally sufficient cause of action.  Reliance "is a necessary element of a cause of action to recover on a breach of express warranty." <u>Id.</u> at * 1.  The issue of reliance was also addressed in <u>Danise v. Safety-Kleen Corp.</u>, 17

2

F.Supp.2d 87 (D. Conn. 1998). There, the court found that there was no breach of an express warranty because the plaintiff had failed to prove reliance on the representations and warranties that were alleged to have been breached. Id. at 97.

Under this authority, by bringing its counterclaim alleging a breach of contractual representations and warranties, defendant Natrol has plainly and affirmatively placed the matter of its reliance "at issue" in this case. Thus, in order to prevail on its claim, Natrol must prove that it did, in fact, rely on the representations and warranties on which its counterclaim rests. As such, the plaintiffs are entitled to discover what Natrol knew, prior to the closing, regarding the facts set forth in the representations and warranties on which their counterclaim is based because such knowledge may well undermine its claim of reliance.

Specifically, the nature and extent of any investigation by Natrol and the nature and extent of the information that Natrol received from its professionals, whether employed internally or hired externally by the defendant, regarding Prolab's labels and products will have a direct bearing on the question of whether Natrol relied on the alleged representations and warranties regarding Prolab's

3

products and their labeling. In this regard, it is important to note that, prior to the consummation of the purchase and sale transaction between the parties, the purchase price to be paid by Natrol was reduced by some $4 million, at least in part because of certain product labeling concerns that Natrol had after it had investigated the matter and discussed the same with the plaintiffs.[1]  It therefore appears that Natrol was provided with some professional advice on the issue of Prolab's product labeling prior to the closing on the sale transaction.  Since the defendant, by bringing the counterclaim, is claiming that it relied on certain representations of the plaintiffs (and, consequently, not on other advice or information) in regard to product labeling, the plaintiffs are entitled to know exactly what the defendant already knew from its investigation into the subject matter of the plaintiffs' representations

The discovery that is the subject of the pending motion to compel is limited.  It is confined to determining what *independent* information Natrol had regarding the labeling and efficacy of Prolab's products when it entered into the

---

[1]  See Deposition Testimony of Elliot Balbert, at p. 29.  Balbert is the chairman, president, CEO and founder of defendant Natrol.  Pertinent pages from that Deposition are attached as Exhibit A to the plaintiffs' initial memorandum of law.

agreement to acquire Prolab. Certainly, if Natrol was given independent advice (legal, technical or otherwise) to the effect either that there was compliance with applicable laws or that there was a problem with such compliance, particularly in regard to product labeling laws, then the plaintiffs will be able to demonstrate that Natrol did not, in fact, rely on the representations and warranties that are the subject of its counterclaim. Because the content of the communications that are the subject of the Motion to Compel may well undermine the factual basis of the counterclaim, defendant Natrol cannot rely on the attorney-client privilege to shield those communications from disclosure. Through its counterclaim, the defendant has affirmatively claimed reliance on the statements of the plaintiffs, but the plaintiffs can test that claim of reliance only by discovering the content of prior communications that the defendant may have had with its attorneys (and others) regarding the subject matter of the representations on which the defendant claims to have relied.

The "at issue" exception to the attorney-client privilege rests on the concept of an "implied waiver," and it applies where "'(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected

5

information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.'" Walsh, 184 F.R.D. at 496, quoting Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975). "Under this standard, 'even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication.'" Walsh, 184 F.R.D. at 496, quoting Bowne v. AmBase Corp., 150 F.R.D. 465, 488 (S.D.N.Y. 1993). As applied to the facts of this case, the decision in Metropolitan Life Ins. Co. v. Aetna Casualty & Surety Co., 249 Conn. 36 (1999), does not hold otherwise.

Under the circumstances of this case, there has been just such an implied waiver of attorney-client privilege because defendant Natrol has "assert[ed] a factual claim the truth of which can only be assessed by examination of a privileged communication." Id. To conclude otherwise would allow the defendant to claim that it relied on the plaintiffs' representations, which is an essential element of its counterclaim, but at the same time foreclose access to information in its possession that may well show that it did not so rely.

Based on the foregoing authorities, the defendant should be compelled to

disclose the requested information. For the defendant to maintain that it can shield this information from disclosure, information that it had in its possession prior to the closing, would constitute a great misuse of the privilege in light of the defendant's counterclaim which is necessarily premised on its purported reliance on the representations and warranties that are claimed to have been breached. Based on the "at issue" exception, the defendant has impliedly waived its claim of attorney-client privilege to the extent that it is maintaining a counterclaim based on such reliance. Accordingly, for all of the reasons set forth in the plaintiffs' initial memorandum of law and for the additional reasons set forth in this reply brief, the plaintiffs' Motion to Compel should be granted.

PLAINTIFFS,

By _____
Richard P. Weinstein, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT  06107
Telephone No. (860) 561-2628
Federal Bar No. ct06215

7

## CERTIFICATION

This is to certify that on the 21st day of November, 2003, a copy of the foregoing was served upon:

Frank F. Coulom, Jr., Esquire
Jason M. Kusellas, Esquire
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

Andrew M. Esposito, Jr.
3 Woodside Drive
Woodbridge, CT 06525


_____
Richard P. Weinstein

PROLAB\MOT COMPEL reply

8

Not Reported in A.2d

(Cite as: 2001 WL 1178333 (Conn.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

CRITERIA II, LTD.,
v.
CO-OPPORTUNITY PRECISION WOOD PRODUCTS, INC.

No. CV000803308S.

Aug. 30, 2001.

RULING ON MOTIONS TO STRIKE (# 121 & 122)

BEACH, J.

A. Co-Opportunity's Motion to Strike Identity Theory

*1 The motion to strike on the ground that facts are not sufficiently alleged to support the allegations of "alter ego" liability premised on the identity theory is denied. Allegations that Co Op, Inc., and Precision Wood Products were not maintained as separate entities, that funds and resources were intermingled such that independent operation was destroyed and that they were operated as a single entity such that they share a unity of interest are, if proved, sufficient to create "alter ego" liability if identity would otherwise result. See *Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.*, 187 Conn. 544, 552.54 (1982); *Davenport v. Quinn*, 53 Conn.App. 282, 300

(1999).

B. Co-Opportunity's and Precision Wood Products' Motion to Strike Statutory Theft

As stated in *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 47 (2000), "an essential element of the tort of conversion is the unauthorized use of another's property. *Wellington Systems, Inc. v. Redding Group, Inc. supra*, 49 Conn.App. 169. Similarly, statutory theft requires that a defendant 'wrongfully' take, obtain or hold the property of another. *Suarez-Negrete v. Trotta, supra*, 47 Conn.App. 520-21."

The allegation that the withholding was "wrongful" is sufficient to state the requisite element of § 52-564 (statutory theft) of the General Statutes. The motion to strike the third count as to both defendants is denied.

C. Motion to Strike Express Warranty Count

The defendants have moved to strike the fourth count, alleging violation of express warranty, because reliance on the purported warranty has not been alleged. Although reliance is not a factor in the determination of whether an express warranty has been made; cf. § 42a-2-313 of the General Statutes; it is a necessary element of a cause of action to recover on a breach of express warranty. *Kraig v. Benjamin*, 111 Conn. 297, 298 (1930). The motion to strike is granted as to the fourth count, as addressed to both defendants.

2001 WL 1178333 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works